# EXHIBIT A





# Orangeburg County
# First Judicial Circuit
# Public Index



Orangeburg County Home Page   South Carolina Judicial Department Home Page   SC.GOV Home Page

| Switch View |
| --- |

## Charmaine Wearing VS Progressive Group Of Insurance Companies , defendant, et al

| Case Number: | 2019CP3801397 | Court Agency: | Common Pleas | Filed Date: | 10/10/2019 |
| --- | --- | --- | --- | --- | --- |
| Case Type: | Common Pleas | Case Sub Type: | Breach of Cont 140 | File Type: | Jury |
| Status: | Pending/ADR | Assigned Judge: | Clerk Of Court C P, G S, And Family Court | | |
| Disposition: | | Disposition Date: | | Disposition Judge: | |
| Original Source Doc: | | Original Case #: | | | |
| Judgment Number: | | Court Roster: | | | |

## Case Parties

Click the icon to show associated parties.

| Name | Address | Race | Sex | Year Of Birth | Party Type | Party Status | Last Updated |
| --- | --- | --- | --- | --- | --- | --- | --- |
| J.D. Power & Associates | 3200 Park Center Drive 13Th Floor Costa Mesa CA 92626 | | | | Defendant | | 10/11/2019 |
| Mitchell International, Inc. | 6220 Greenwich Drive San Diego CA 92122 | | | | Defendant | | 10/11/2019 |
| Progressive Group Of Insurance Companies | 6300 Wilson Mills Road Mayfield OH | | | | Defendant | | 10/11/2019 |
| Ward, James L. Jr. | 321 Wingo Way Suite 103 Mt. Pleasant SC 29464 | | | | Plaintiff Attorney | | 10/11/2019 |
| Wearing, Charmaine | P.O. Box 621 Eutawville SC 29048 | | | | Plaintiff | | 10/11/2019 |

## Actions

| Name | Description | Type | Motion Roster | Begin Date | Completion Date | Documents |
| --- | --- | --- | --- | --- | --- | --- |
| Wearing, Charmaine | ADR/Alternative Dispute Resolution (Workflow) | Action | | 05/07/2020-17:07 | | |
| Wearing, Charmaine | NEF(11-14-2019 10:30:49 AM) Affidavit/Attorney | Filing | | 11/14/2019-10:52 | | 📄 |
| Wearing, Charmaine | Affidavit/Attorney | Filing | | 11/14/2019-10:30 | | 📄 |
| Wearing, Charmaine | NEF(10-29-2019 08:48:31 AM) Affidavit/Affidavit of | Filing | | 10/29/2019-09:01 | | 📄 |
| Wearing, Charmaine | Affidavit/Affidavit of | Filing | | 10/29/2019-08:48 | | 📄 |
| Wearing, Charmaine | Affidavit/Affidavit of | Filing | | 10/29/2019-08:48 | | 📄 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Wearing, Charmaine | NEF(10-11-2019 04:30:27 PM) Amended/Amended Summons And ... | Filing | | 10/11/2019-16:52 | | 📄 |
| Wearing, Charmaine | Amended/Amended Summons And Complaint | Filing | | 10/11/2019-16:30 | | 📄📄 |
| Wearing, Charmaine | Summons & Complaint | Filing | | 10/10/2019-17:07 | | 📄📄 |

## Financials

### Summary

| Fine/Costs: | $150.00 | Total Paid for fine/costs: | $150.00 | Balance Due: | $0.00 |
|---|---|---|---|---|---|

### Costs

| Description | Cost Code | Amount | Charge Action | Disbursed Amount |
|---|---|---|---|---|
| Civil Filing Fee County 44%/100% | CVFFCN | $44.00 | | $44.00 |
| Civil Filing Fee State 56% | CVFFST | $56.00 | | $56.00 |
| SCJD Filing Fee Proviso $50 / $25 | SCJDPV | $50.00 | | $50.00 |

### Payments

| Payment Date | Receipt Number | Entered By | Transaction Type Code | Payment Amount |
|---|---|---|---|---|
| 10/11/2019 | 49687 | C38CHILL | PY | $150.00 |

CMSWeb 6.1 © 2019 South Carolina Judicial Branch ● All rights reserved

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE FIRST JUDICIAL CIRCUIT |
| COUNTY OF ORANGEBURG | ) | |
| | ) | |
| CHARMAINE WEARING, individually | ) | CASE NO.: 2019-CP-_____ |
| and on behalf of those similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | **SUMMONS** |
| | ) | |
| vs. | ) | |
| | ) | |
| PROGRESSIVE GROUP OF INSURANCE | ) | |
| COMPANIES, J.D. POWER & | ) | |
| ASSOCIATES, and MITCHELL | ) | |
| INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

TO:    THE ABOVE-NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your pleading to said Complaint upon the subscribers at their offices at 321 Wingo Way, Suite 103, Mt. Pleasant, South Carolina 29464, within 30 days after the service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, Plaintiff will apply to the Court for judgment by default for the relief demanded in the Complaint.

s/ *James L. Ward, Jr.*
James L. Ward, Jr. (SC Bar No. 13453)
**MCGOWAN, HOOD & FELDER, LLC**
321 Wingo Way, Suite 103
Mt. Pleasant, SC 29464
Telephone: (843) 388-7202
jward@mcgowanhood.com

Jonathan H. Waller*
**WALLER LAW OFFICE, PC**
2001 Park Place, Suite 900
Birmingham, AL 35203
Telephone: (205) 313-7330
jwaller@waller-law.com

*Attorneys for Plaintiff and the proposed Class*

*Pending pro hac vice admission*

October 10, 2019
Mt. Pleasant, South Carolina

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE FIRST JUDICIAL CIRCUIT |
| COUNTY OF ORANGEBURG | ) | |
| | ) | |
| CHARMAINE WEARING, individually | ) | CASE NO.: 2019-CP-_____ |
| and on behalf of those similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| vs. | ) | (Jury Trial Demanded) |
| | ) | |
| PROGRESSIVE GROUP OF INSURANCE | ) | |
| COMPANIES, J.D. POWER & | ) | |
| ASSOCIATES, and MITCHELL | ) | |
| INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Charmaine Wearing, individually and on behalf of those similarly situated ("Plaintiff"), by and through undersigned counsel, complains of Defendants Progressive Group of Insurance Companies ("Progressive"), J.D. Power & Associates ("J.D. Power"), and Mitchell International, Inc. ("Mitchell") (collectively, "Defendants"), and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Charmaine Wearing is an adult citizen of Eutawville, Orangeburg County, South Carolina.

2.      Plaintiff brings this action in her individual capacity and on behalf of a Class of all other persons similarly situated in the state of South Carolina.

3.      Defendant Progressive is incorporated under the laws of the state of Ohio with its principal place of business in Mayfield, Ohio. Progressive issued an automobile liability insurance policy, including coverage for first-party total loss claims, to Plaintiff that was in force on the date of the total loss at issue.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

4.      Defendant J.D. Power is incorporated under the laws of the state of Delaware and has its principal place of business in Westlake, California.

5.      Defendant Mitchell is incorporated under the laws of the state of Delaware and has its principal place of business in San Diego, California.

6.      This Court has personal jurisdiction over Defendants pursuant to S.C. Code § 36-2-802, because Defendants have an enduring relationship with the state of South Carolina. Defendants have sufficient minimum contacts with the state of South Carolina and/or otherwise intentionally and purposefully availed themselves of the privilege of conducting business in South Carolina by providing products and services to residents of South Carolina and deriving substantial revenue from products and services sold in South Carolina.  Accordingly, the exercise of personal jurisdiction over Defendants complies with judicial notions of fair play and substantial justice.

7.      Venue is proper pursuant to S.C. Code §15-7-30 because Plaintiff resided in Orangeburg County at the time the cause of action arose.

## NATURE OF THE ACTION

8.      This South Carolina Class Action arises from Defendants' systemic and intentionally wrongful and improper scheme to under-value total losses involving the vehicles of Progressive first-party insureds.

9.      Through its auto insurance policy contracts, Progressive has agreed to provide, *inter alia*, collision coverage for losses resulting from damage to insureds' vehicles.  The Progressive Policy provides for adjustment and settlement of first-party total loss claims on the basis of actual cash value or replacement.

10.      Progressive has spent many tens of millions of dollars to market itself as a fair and honest insurance company. However, Progressive and its co-conspirators, J.D. Power and

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

Mitchell, are not fair and honest in providing valuations to Progressive insureds whose vehicles have been involved in an accident and are determined to be a total loss.

11.     As alleged hereafter, J.D. Power and Mitchell have formed a joint partnership to provide total loss valuation reports to insurers such as Progressive.  J.D. Power and Mitchell call these reports "WorkCenterTM Total Loss Vehicle Valuation Reports" ("WCTL Reports").

12.     Typically, insurers contract with Mitchell to receive the WCTL Reports, which are prepared by this joint partnership.

13.     Progressive has contracted with Mitchell to receive such WCTL Reports.  Through this joint partnership and Mitchell's agreement with Progressive, Progressive, Mitchell, and J.D. Power have engaged in a scheme to artificially deflate the value of first-party total loss claims to pay insureds substantially less than the actual pre-loss cash value of their total loss vehicles.

14.     Plaintiff and the putative Class are Progressive automobile insurance Policy holders whose vehicles Progressive determined to be a total loss, and who have been subject to the Progressive, J.D. Power, and Mitchell's scheme to artificially deflate the value of, and under-pay, their total loss claims.

15.     When Progressive entered into the Policies at issue in this case with Plaintiff and Class Members, Progressive knew, but failed to disclose to Plaintiff and the Class, that the WCTL Reports would wrongfully under-value their total loss vehicles. Through this scheme, Progressive, J.D. Power, and Mitchell have engaged in unlawful conduct in violation of South Carolina law, common law, and their respective contractual obligations, which has uniformly damaged Progressive insureds in South Carolina in a readily ascertainable dollar amount.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP380 1397

## GENERAL FACTUAL ALLEGATIONS

### A.   Plaintiff's Progressive Policy and Plaintiff's Total Loss

16.    Plaintiff was the owner of a 2012 Ford Fusion SEL (the "Vehicle").

17.    Progressive issued its Automobile Policy No. 916349359 (the "Policy") to Plaintiff, which insured the Vehicle. That Policy was in effect in May 2019.

18.    Following an automobile accident on May 7, 2019, Progressive determined that Plaintiff's Vehicle was a total loss.

19.    The terms of the Policy are not individualized, unique, or specific to Plaintiff. Plaintiff's Policy is the same standard form issued by Progressive to insureds throughout the state of South Carolina.

20.    Plaintiff's Policy requires Progressive to pay the "actual cash value" of the total loss vehicle.

21.    J.D. Power and Mitchell provided Progressive with a WCTL Report for Plaintiff's Vehicle on or about May 13, 2019 ("Plaintiff's Report").  A true and correct copy of Plaintiff's WCTL Valuation Report is attached and incorporated herein as Exhibit A.

22.    As reflected by Plaintiff's Report, WCTL Reports first calculate a purported Base Value.  The Report then makes purported adjustments for "condition" ("Condition Adjustment"), prior damage, aftermarket parts, and refurbishment that are deducted from Base Value to calculate Market Value.  The great majority of WCTL Reports include a downward Condition Adjustment.

23.    Plaintiff's Report purports to state a Base Value for her Vehicle in the amount of $7,647.24 and a Market Value of $6,318.18 after a negative Condition Adjustment in the amount of $1,379.06 (before applying her deductible in the amount of $500.00).  The Market Value in

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

Plaintiff's WCTL Report wrongly deprived her of $1,379.06 based upon the downward Condition Adjustment, which is statistically invalid.

24.     In addition, the Base Value from which the Condition Adjustment amount was deducted is also based on statistically invalid WCTL methodology, as alleged *infra*. Accordingly, the actual cash value of Plaintiff's Vehicle is substantially and improperly understated as a result of the statistically invalid WCTL Report.

25.     Plaintiff's Report failed to properly value Plaintiff's Vehicle and did not properly pay the actual cash value that Progressive owed to Plaintiff.

26.     As a direct result of statistically invalid WCTL Reports, Progressive has intentionally and materially underpaid the total loss claims of Plaintiff and the Class Members.

**B.     The Mitchell and J.D. Power Partnership and WCTL Methodology**

27.     Mitchell and J.D. Power entered into a joint partnership to provide WCTL Reports to insurers, including Progressive.

28.     The partnership between Mitchell and J.D. Power is described as follows in each of the WCTL Reports:

> WorkCenter Total Loss was designed and built in conjunction with J.D. Power's experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D. Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

Exhibit A at p. 8.

29.     Additionally, WCTL Reports specifically bear the names of both J.D. Power and Mitchell on the first page of each Report.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

30.     Each WCTL Report contains a Methodology Explanation (the "Methodology"), which is located on the last page of each WCTL Report.  See Exhibit A at 8.

31.     The Methodology assigns actual cash values for total loss vehicles in an amount that is significantly lower than those assigned by published and publicly available valuation models, such as NADA, Black Book, Red Book, and Kelly Bluebook.

32.     The Methodology is explained as a five-step process used to "produce accurate and easy-to -understand vehicle valuations."  This five-step process includes:

> Step 1 - Locate Comparable Vehicles
>
> Step 2 - Adjust Comparable Vehicles
>
> Step 3 - Calculate Base Vehicle Value
>
> Step 4 - Calculate Loss Vehicle Adjustments
>
> Step 5 - Calculate the Base Value

Exhibit A at 8.

33.     None of these steps relating to comparable vehicles, making vehicle adjustments, and calculating base values are based on statistically valid methodologies, algorithms, values, or computations. Each step is, in fact, statistically invalid and does not result in a proper valuation for total loss vehicles in South Carolina.

34.     Specifically, the Methodology for identifying Comparable Vehicles and for making purported "equating" adjustments for equipment, options, and mileage is statistically invalid.  (See Steps 1 and 2, which result in "Base Vehicle Value" at Step 3).

35.     The Market Values in the WCTL Valuations are known by Progressive to be regularly, materially, and substantially lower than the values for comparable vehicles, and to deny

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

insureds, such as Plaintiff and the Class, a proper cash value amount sufficient for its insureds to purchase a comparable replacement vehicle.

36.     The Methodology for making downward Condition Adjustments, which is a major aspect of the fraudulent scheme to under-value total losses, and the other "Vehicle Adjustments" is statistically invalid.  (See Step 4).

37.     Specifically, the dollar amounts assigned to Condition Adjustments in the WCTL Reports are wholly arbitrary and are not based on any statistical, objective, valid, or verifiable data. Accordingly, all such downward Condition Adjustments are improper in all respects and should be disregarded in properly valuing a Progressive insured's total loss vehicle.

38.     The intended and wrongful result of the five steps and sub-steps included in Exhibit A is that total loss vehicles are undervalued, and Progressive insureds' total loss claims are underpaid. This underpayment is a detriment to Progressive insureds, including Plaintiff, and a benefit to Defendants. Rather than paying Plaintiff and Class Members the proper amount for their total loss vehicles, Progressive has retained significant funds in the millions of dollars by underpaying Plaintiff and Class Members for the value of their total loss vehicles.

39.     The WCTL  Reports routinely provide Progressive total loss vehicle values that are *not intended* to yield an appropriate Actual Cash Value for Plaintiff's Vehicle or comparable vehicles, but are calculated to yield a substantially lesser and improper amount.

40.     The substantial majority of Progressive's first-party total loss claims in South Carolina are settled on the basis of the WCTL Valuations.

## C.     Progressive's Use of the Unlawful WCTL Valuations

41.     Progressive contracted with Mitchell to receive the WCTL Reports prepared by the J.D. Power/Mitchell partnership.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

42.    Mitchell provided Progressive with WCTL Reports for the total loss vehicles of the Plaintiff and the Class.

43.    Progressive has a regular practice of knowingly and falsely informing insureds that the WCTL Reports properly establish Actual Case Value and provide the basis for proper payment of total loss claims under Progressive Policies in South Carolina.

44.    Progressive has the regular and systemic claims practice of demanding that insureds settle total loss claims based upon the WCTL Reports and refusing to negotiate the Market Values in the Reports with the insureds.

45.    Progressive has actual knowledge that the WCTL Methodology is statistically invalid and unlawful.

46.    Progressive has suppressed and concealed material facts relating to WCTL's Market Valuation System and its pre-existing scheme in conspiracy with J.D. Power and Mitchell to intentionally undervalue total loss claims, including those of Plaintiff and the Class. Specifically, Progressive concealed from Plaintiff that its purported total loss valuations were based upon the statistically invalid and unlawful WCTL Valuation Methodology.

47.    Plaintiff and the Class Members have been damaged by Progressive's systemic underpayment of total loss claims.  This underpayment results from Progressive's intentional failure to fairly and properly determine Actual Cash Value and its knowingly improper downward Condition Adjustments.

48.    Progressive has knowingly and intentionally acted in bad faith towards its South Carolina insureds in regularly and routinely utilizing WCTL Reports to adjust total loss claims.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

**D.**   **Guidebook Values**

49.    Other entities involved in the automobile business, such as new and used car dealers, and banks and other lending institutions, do not use WCTL Reports as a basis for determining a fair valuation or Actual Cash Value of used vehicles.

50.    Such entities have historically used industry-recognized guidebooks as sources for proper used vehicle valuation ("Guidebooks").  These Guidebooks include NADA, Kelly Blue Book, and Black Book.  These Guidebooks are a proper source for determining Actual Cash Value. Insurers, including Progressive, know that Guidebook values are usually substantially higher than WCTL values.

51.    Until about twenty years ago, insurers also used Guidebooks for the purpose of determining proper valuations to adjust total loss claims.

52.    Insurers typically declare a vehicle to be a total loss if the estimated repair costs exceed either the pre-loss value of the vehicle or a percentage (such as 80%) of the pre-loss vehicle valuation.

53.    Classifying a vehicle as a repair rather than a total loss saves insurers substantial claims dollars because repair cost typically is less than the pre-loss value of the vehicle. Thus, it is in the insurer's economic interest to establish a higher value of the vehicle when classifying a vehicle as either a repair or a total loss, so that the cost of repair is a smaller percentage of the pre-loss vehicle valuation and the vehicle is less likely to be a total loss.

54.    A number of years ago, insurers, including Progressive, determined that they could save many millions of dollars by adjusting total loss claims based upon third-party valuations prepared by either J.D. Power/Mitchell or another third-party valuation company, CCC Information Services ("CCC").  It is clear bad faith to use Guidebook Values to attempt to classify

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

a damaged vehicle as a repair to avoid the higher cost of a total loss, but then use WCTL to reduce the cost of a total loss.

55.     Accordingly, in the last twenty years, many insurers have adopted the regular practice of using WCTL or CCC valuations of total loss vehicles to adjust total loss claims, and disregarding the historically-recognized Guidebooks as a source of valuation, to improperly save millions of dollars.

56.     The WCTL Reports are not used or recognized by any other "player" in the automobile industry, including dealers or lending institutions.

**E.     Progressive Has Waived and is Estopped from Asserting the Appraisal Provision**

57.     **Progressive's Preexisting Appraisal Scheme**:  During the relevant time period, Progressive had, and continues to have, a standard practice of refusing to negotiate the Base Vehicle Value and Adjusted Vehicle Value as reflected in the WCTL Reports unless WCTL has, for example, omitted an option.  Specifically, Progressive has a regular practice of refusing to negotiate in good faith with respect to comparable vehicles, mileage adjustments for comparable vehicles, condition adjustments to the specific total loss vehicle, or comparable vehicle condition adjustments.  Specifically, Progressive typically will not negotiate either the Base Vehicle Value or Market Values of total loss vehicles.

58.     Progressive knows that its insureds typically have no practical choice other than to accept the total loss payment offered by Progressive simply because the insured needs the money to purchase a replacement vehicle.

59.     Further, an insured cannot wait on the appraisal process.  Progressive also has a regular practice of threatening to withdraw its offer to pay a total loss if the insured requests an

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

appraisal.  An appraisal process, including selection of an umpire, may take forty-five (45) days or more.

60.     This threat of withdrawal of its offer, combined with delay and expense to the insured of an appraisal, as alleged below, present bad faith obstacles to a fair appraisal.  Progressive simply "stands pat" unless it is sued.

61.     Progressive knows that if it insists on "standing" on the WCTL Valuation, the great majority of insureds will simply capitulate and take the Progressive total loss payment.

62.     Progressive also had, and continues to have, a regular practice of not demanding an appraisal unless and until an insured files a lawsuit.  Progressive does not include the appraisal provision in its Policies for the appropriate purpose of a cheap and efficient resolution, on a timely basis, of disputed first-party total loss claims.  As stated, even where there is a clear and material dispute with an insured, Progressive does not demand an appraisal unless a lawsuit is filed.

63.     **Prejudice to Plaintiff and Other Insureds**:  Progressive's scheme to not invoke the appraisal unless and until there is litigation materially prejudices Progressive insureds, including Plaintiff, in several material ways.

64.     First, Progressive typically sells the salvaged total loss vehicle to one of two companies, Copart, Inc. or Insurance Auto Auctions, Inc. ("IAA").  These companies pay a salvage value to Progressive and then market salvaged parts from total loss vehicles.  The total loss vehicle is typically sold by Progressive and salvaged for spare parts in thirty (30) to forty-five (45) days after the total loss.

65.     Progressive has actual knowledge that if an insured disputes Progressive's total loss payment but does not demand an appraisal, the total loss vehicle will be unavailable for inspection and appraisal after such salvage.  Thus, Progressive knows that if it does not request an appraisal

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

for months or even years, and then does so only if and when litigation is filed against Progressive, the total loss vehicle will be unavailable for physical inspection and appraisal.  Plaintiff's Vehicle, of course, has been salvaged and is not available for an inspection.

66.     Progressive also knows that industry-recognized information regarding comparable used vehicles listed for sale at the time of a loss from sources such as AutoTrader and Cars.com is no longer current after about ninety (90) days.

67.     The only possible appraisal after the vehicle has been salvaged is what is known in the industry as a "desktop" appraisal, which is based upon the limited information available a year or two years after the total loss.

68.     The prejudice to insureds such as Plaintiff is clearly illustrated by the information regarding the "vehicle condition," which is listed in WCTL Reports.  See Exhibit A at 4. Consistent with J.D. Power/Mitchell's standard practice, WCTL Reports list purported "component condition" for "interior" (including headliner, glass, dash/console, seats, and carpet), "exterior" (including body vinyl/convertible top, trim, and paint), "mechanical" (including engine and transmission), and "tires."

69.     When the vehicle is unavailable at the time Progressive demands an appraisal, it is impossible to fairly review the actual condition of each of the listed "component" conditions based upon an inspection.  Thus, Plaintiff has been deprived of the right to a proper inspection-based appraisal as a result of Progressive's delay and the salvage of her Vehicle.

70.     **Cost as a Deterrent to an Appraisal**:  In addition, the fact that the appraisal provision requires the insured to pay for the cost of an appraiser and share the expense of a third-party umpire is intended by Progressive to be, and is, in fact, a significant and improper deterrent to insureds such as Plaintiff with regard to invoking the appraisal provision, because the cost to

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

Plaintiff of an in-person inspection by an appraiser, and the fees and expenses of a third-party umpire, may well exceed $1,000.

71.     For all of these reasons, based upon its pre-existing scheme regarding untimely utilization of the appraisal provision and the clear prejudice to insureds such as Plaintiff, Progressive (and J.D. Power/Mitchell) have waived, and are estopped from invoking, the appraisal provision in Plaintiff's Policy.

## CLASS ALLEGATIONS

72.     Plaintiff brings this class action individually and on behalf of all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the South Carolina Rules of Civil Procedure:

> All persons and entities that made first-party claims from October 10, 2016 through October 10, 2019 under an automobile insurance policy issued within the State of South Carolina by Progressive and whose vehicles were declared a total loss by Progressive and were valued using WCTL's total loss valuation system.

Excluded from the Class are:

a.     Defendants, all related entities, subsidiaries, or affiliates of Defendants, any entity in which Defendants have a controlling interest, and any and all of Defendants' employees, affiliates, legal representatives, heirs, successors, or assignees;

b.     Any person or entity that has previously commenced and resolved a lawsuit against Defendants arising out of the subject matter of this lawsuit; and

c.     The judge assigned to this case and any member of the judge's immediate family.

73.     **The Condition Adjustment Subclass:** This Subclass consists of all South Carolina insureds whose total loss claims were reduced by negative or downward Condition Adjustments.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

74.     **The Base Value Subclass:** This Subclass consists of all South Carolina insureds whose vehicles received WCTL Reports with Adjusted Vehicle Values that were less than Actual Cash Value as established by Guidebooks.

75.     **Numerosity:** The Class is so numerous that joinder of all affected persons would be impracticable. Although the exact number of Class Members is unknown to Plaintiff, the Class is estimated to consist of many thousands of people who have sustained total losses to their vehicles while insured by Progressive.

76.     **Commonality:** Numerous questions of law and fact are common to Plaintiff and the Class and predominate over any individual questions. These legal and factual questions include, but are not limited to:

a.     Whether Progressive failed to properly investigate and determine that WCTL Valuations are statistically invalid;

b.     Whether Progressive had actual knowledge that WCTL Valuations are statistically invalid;

c.     Whether South Carolina law required Progressive to pay actual cash value to its South Carolina insureds;

d.     Whether Progressive's Policy required it to pay actual cash value to its South Carolina insureds.

e.     Whether Progressive breached its contracts of insurance with its South Carolina insureds by improperly underpaying total loss claims through the use of statistically invalid WCTL Valuations;

f.     Whether Progressive failed to pay actual cash value to its South Carolina insureds;

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

g.      Whether WCTL Valuations properly calculate the actual cash value of total loss vehicles at the time of the loss;

h.      Whether Progressive has intentionally and systemically underpaid total loss claims to Plaintiff and the Class by using statistically invalid WCTL Valuations;

i.      Whether Plaintiff and the Class have sustained damages;

j.      Whether Defendants have been unjustly enriched as a result of the scheme described herein; and

k.      Whether Defendants have conspired as alleged herein.

77.     **Typicality:** Plaintiff's claims are typical of the claims of the Class Members, as Plaintiff and all Class Members have suffered damages as a result of Defendants' unlawful and deceptive scheme of settling total loss vehicle claims for substantially less than the actual replacement costs of such vehicles. Specifically, the total loss claims of the Class Members were adjusted by Progressive based upon WCTL Valuations. The same discovery and evidence that would be used to support Plaintiff's claims will be used to support the claims of the Class Members.

78.     **Adequacy of Representation:** Plaintiff will fully and adequately represent and protect the interests of the Class Members because they share common injuries as a result of Defendants' conduct that is applicable to all Class Members. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests that are contrary to or in conflict with those of the Class they seek to represent.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

79.     **Predominance and Superiority:** This Action is properly maintained as a class action because questions of law and fact common to Plaintiff's claims and the claims of the Class Members predominate over questions of law and fact affecting only individual Class Members, such that a class action is superior to other methods for the fair and efficient adjudication of this controversy. The issues in relation to Plaintiff's claims are similar to the issues relating to the claims of the other Class Members, such that a class action provides a far more efficient vehicle to resolve the claims than a myriad of separate lawsuits. Accordingly, for most Class Members, a class action is the only mechanism by which they could reasonably expect to vindicate their rights. Certification of the Class is also supported by the following considerations:

a.     The relatively small amount of damages that Class Members have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b.     Counsel in this class action are not aware of any earlier litigation against Defendants to which any other Class Members are a party and in which any question of law or fact controverted in the subject action is to be adjudicated;

c.     By virtue of Defendants' efforts to conceal their scheme, many Class Members may not even be aware they have a claim;

d.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action;

e.     Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants and further the efficient adjudication of Class Member claims; and

f.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

A.    <u>**Damages Calculations for the Class**</u>

80.    Calculation of Class damages is readily manageable. Progressive maintains specific information in its electronic database relating to first-party total loss claims identifying each claim and the amount of any negative or downward Condition Adjustment on each claim.

81.    In addition, Progressive maintains aggregate data on the total amount of negative or downward Condition Adjustments in South Carolina (and other states) on an annual basis.

82.    Accordingly, when the Class establishes that all of the Progressive negative or downward Condition Adjustments are statistically invalid, each Class Member will be entitled to a refund in the full amount of any such Condition Adjustment. As stated, that amount can be readily determined on an individual basis for each Progressive first-party insured as well as on an aggregate basis.

83.    All of the damages claimed in this action on a Class-wide basis are readily and easily ascertainable from the Progressive electronic database relating to its South Carolina total loss claims.

84.    Defendants have acted, or refused to act, in a manner that applies generally to the Class, such that final injunctive relief is appropriate as to the Class as a whole.

**FOR A FIRST CAUSE OF ACTION**
**Breach of Contract**
**(Against Progressive)**

85.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

86.    The Progressive Policy issued to Plaintiff constitutes a valid and binding contract.

87.    Progressive has breached its Policy with Plaintiff in multiple ways, resulting in the material underpayment of Plaintiff's total loss claim, which include, but are not limited to: (a)

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

failure to properly investigate and confirm the statistical validity of the WCTL Valuation Methodology; (b) improper delegation of its obligation to value total loss vehicles, including Plaintiff's Vehicle, to WCTL; and (c) wrongful failure to properly adjust and pay the amounts due and owed to Plaintiff for her total loss vehicle sufficient for Plaintiff to obtain a comparable replacement vehicle.

88.     Specifically, Progressive has failed to pay Actual Cash Value as required by its Policy to Plaintiff and to Class Members.

89.     Progressive's breach proximately caused Plaintiff's actual damages and the actual damages of the Class. Thus, Progressive is liable for actual, consequential, and incidental damages flowing from its breach of the Policy, as well as any other such damages, costs, or attorneys' fees to which Plaintiff may be entitled under South Carolina law.

90.     This claim applies to all Class Members.

**FOR A SECOND CAUSE OF ACTION**
**Breach of Contract Accompanied by Fraudulent Act**
**(Against Progressive)**

91.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

92.     Progressive's breach of contract was accompanied by multiple fraudulent acts and fraudulent intent as more fully alleged in ¶¶ 10-15, 27-40 and 41-48, which are specifically incorporated in this cause of action.

93.     These actions of Progressive are characterized by dishonesty in fact and unfair dealing.

94.     When Progressive issued the Policy to Plaintiff, Progressive had been using WCTL to adjust total loss claims in South Carolina for a number of years.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

95.     Progressive had the actual fraudulent intent to improperly adjust all South Carolina total losses based upon WCTL Reports for the specific purpose of intentionally cheating Plaintiff and the Class Members and materially underpaying total loss claims in a uniform and specific way.

96.     Progressive's breach of contract accompanied by fraudulent acts proximately caused Plaintiff's actual damages and the actual damages of the Class. Thus, Progressive is liable for compensatory and punitive damages, as well as any other such damages, costs, or attorneys' fees to which Plaintiff may be entitled under South Carolina law.

97.     This claim applies to all Class Members.

### FOR A THIRD CAUSE OF ACTION
### Bad Faith
### (Against Defendant Progressive)

98.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

99.     The Policies obligated Progressive to properly and reasonably investigate the fair value of the total losses sustained by each insured, including Plaintiff, and then pay that amount in a timely manner. The Policies also obligated Progressive to act in good faith and to deal fairly with Plaintiff in handling and adjusting her total loss claim.

100.    Instead of properly investigating and paying Plaintiff's total loss claim, Progressive contracted with J.D. Power and Mitchell and utilized the WCTL Valuations for the wrongful and bad faith purpose of intentionally and improperly reducing total loss payments to Plaintiff and the Class Members in an improper attempt to save money at the expense of Progressive insureds, including Plaintiff and the Class Members.

101.    Progressive has actual knowledge that the WCTL Valuation Methodology is statistically invalid.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

102.     Progressive's conduct in "low balling" Plaintiff's claim, intentionally undervaluing Plaintiff's claim, and withholding the full value of that claim is unreasonable and unjustifiable under the circumstances and constitutes bad faith under South Carolina law.

103.     Progressive has acted in bad faith in adjusting Plaintiff's claim and the total loss claims of Class Members in a systemic and uniform manner by making statistically invalid downward Condition Adjustments based upon WCTL Valuations.

104.     Plaintiff has suffered damages as a direct and proximate result of such unreasonable, bad faith conduct on the part of Progressive and is, therefore, entitled to recover compensatory and punitive damages, as well as any other such damages, costs, or attorneys' fees to which Plaintiff may be entitled under South Carolina law.

105.     This claim applies to all Class Members.

**FOR A FOURTH CAUSE OF ACTION**
**Tortious Interference with Performance of a Contract**
**(Against Defendants J.D. Power and Mitchell)**

106.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

107.     The Policies obligated Progressive to properly investigate the value of Plaintiff's total loss claim using a fair and statistically valid valuation system or methodology, and then to properly pay Plaintiff the appropriate value of her total loss.

108.     At all times relevant hereto, and based on Mitchell's contract with Progressive to provide WCTL Reports, J.D. Power and Mitchell knew that Progressive entered into the Policies with its insureds and that the Policies obligated Progressive to promptly and properly pay total loss claims.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

109.    J.D. Power and Mitchell had actual knowledge of the identity of Plaintiff and each Class Member as Progressive insureds.  This knowledge is demonstrated by the fact that J.D. Power and Mitchell prepared the Plaintiff's WCTL Report, which specifically identified Plaintiff and valued Plaintiff's vehicle.  The same is true for the WCTL Reports of the other Class Members.

110.    J.D. Power and Mitchell had actual knowledge that Progressive used the WCTL Valuations to adjust the total loss claims of Plaintiff and the Class Members.

111.    J.D. Power and Mitchell also had actual knowledge that Progressive typically would refuse to increase total loss valuations beyond the WCTL Valuations and that Progressive settled the substantial majority of its total loss claims based upon WCTL Valuations provided by J.D. Power and Mitchell.

112.    J.D. Power and Mitchell wrongfully interfered with Progressive's contractual obligations to Plaintiff by knowingly and intentionally selling to Progressive a statistically invalid and wholly arbitrary total loss valuation product for the specific purpose of enabling Progressive to underpay the claims of total loss insureds, including Plaintiff.

113.    Progressive's breaches that were caused by J.D. Power and Mitchell's unjustified, intentional, and malicious interference with Plaintiff's contractual rights under the Policy include:

a.    failing to properly value Plaintiff's total loss;

b.    using arbitrary and statistically invalid methodology to value Plaintiff's total loss claim; and

c.    causing Progressive to fail to pay the proper amount due and owed to Plaintiff.

114.    Plaintiff suffered damages as a proximate result of J.D. Power and Mitchell's improper WCTL Valuations and resulting tortious interference with the contractual relationship

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP380I397

between Progressive and Plaintiff and the Class. Therefore, Plaintiff is entitled to recover compensatory and punitive damages, as well as any other such damages, costs or attorneys' fees to which she may be entitled under South Carolina law.

115.    This claim applies to all Class Members.

**FOR A FIFTH CAUSE OF ACTION**
**Breach of Contract Arising from Plaintiff's Status as Third-Party Beneficiary of the Agreement between J.D. Power/Mitchell and Progressive**
**(Against Defendants J.D. Power and Mitchell)**

116.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

117.    At all times relevant hereto, Mitchell, through its joint venture with J.D. Power, contracted to provide Progressive with total loss valuations (the "Agreement"). The intended purpose of this Agreement was to outsource Progressive's valuation of total loss claims for the purpose of satisfying Progressive's obligations to value and pay total loss claims.

118.    As insureds for whom valuations were prepared under this Agreement, Plaintiff and the Class Members are intended beneficiaries of the Agreement and are entitled to sue for breach of that Agreement.

119.    Plaintiff alleges J.D. Power and Mitchell breached this Agreement by providing Progressive with total loss valuations that were not statistically valid and were wholly arbitrary in the manner in which they valued total losses, including Plaintiff's total loss. The improper WCTL Valuations were supplied to Progressive by Mitchell in the course of business for the purported direct benefit of Plaintiff and the Class Members.

120.    Mitchell's breach of its Agreement to provide valid total loss valuations to Progressive proximately caused damage to Plaintiff. Mitchell is, therefore, liable to Plaintiff as an intended third-party beneficiary for actual, consequential, and incidental damages flowing from its

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

breach of the Agreement, as well as any other such damages, costs, or attorneys' fees to which Plaintiff may be entitled under South Carolina law.

121.    J.D. Power is likewise liable for Mitchell's breach of the Agreement based upon its actual involvement with the WCTL Valuation Methodology and its partnership with Mitchell.

122.    This claim applies to all Class Members.

**Prayer for Relief**

**WHEREFORE,** Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Honorable Court:

A.    Certify the Class alleged herein;

B.    Appoint Plaintiff as Class Representative;

C.    Appoint the undersigned as Class Counsel;

D.    Award Plaintiff and Class Members actual damages in such amount as the Court or jury may determine;

E.    Award declaratory and injunctive relief as permitted by law;

F.    Award punitive damages as permitted by law;

G.    Award reasonable attorneys' fees, filing fees, expert fees, litigation costs, and expenses to counsel based upon the benefit received by Plaintiff and the Class; and

H.    Award Plaintiff and Class Members any additional relief as this Court deems just and proper, including injunctive relief to prohibit Progressive from continuing to utilize WCTL Valuations in South Carolina.

ELECTRONICALLY FILED - 2019 Oct 10 5:07 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all causes of action for which a trial by jury is permitted by law.


Dated: October 9, 2019                  Respectfully submitted,


                                        s/ *James L. Ward, Jr.*
                                        James L. Ward, Jr. (SC Bar No. 13453)
                                        **MCGOWAN, HOOD & FELDER, LLC**
                                        321 Wingo Way, Suite 103
                                        Mt. Pleasant, SC 29464
                                        Telephone: (843) 388-7202
                                        jward@mcgowanhood.com

                                        Jonathan H. Waller*
                                        **WALLER LAW OFFICE, PC**
                                        2001 Park Place, Suite 900
                                        Birmingham, AL 35203
                                        Telephone: (205) 313-7330
                                        jwaller@waller-law.com

                                        *Attorneys for Plaintiff and the proposed Class*

                                        *Pending pro hac vice admission*

October 10, 2019
Mt. Pleasant, South Carolina

# Certificate of Electronic Notification

### Recipients

**James Ward** - Notification transmitted on 10-11-2019 04:30:42 PM.

ELECTRONICALLY FILED - 2019 Oct 11 4:52 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:** 2019CP3801397

**Official File Stamp:**               10-11-2019 04:30:27 PM

**Court:**                             CIRCUIT COURT

                                        Common Pleas

                                        Orangeburg

**Case Caption:**                      Charmaine Wearing VS Progressive Group Of
                                        Insurance Companies , defendant, et al

**Document(s) Submitted:**             Amended/Amended Summons And Complaint

                                          -  Exhibit/Filing of Exhibits

**Filed by or on behalf of:**          James L. Ward, Jr.

This notice was automatically generated by the Court's auto-notification system.

–

**The following people were served electronically:**

                                        James L. Ward, Jr. for Charmaine Wearing

**The following people have not been served electronically by the Court. Therefore, they must
be served by traditional means:**

                                        J.D. Power & Associates

                                        Mitchell International, Inc.

                                        Progressive Group Of Insurance Companies

ELECTRONICALLY FILED - 2019 Oct 11 4:52 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

| | |
|---|---|
| STATE OF SOUTH CAROLINA )<br>)<br>COUNTY OF ORANGEBURG )<br>)<br>CHARMAINE WEARING, individually )<br>and on behalf of those similarly situated, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>PROGRESSIVE DIRECT INSURANCE )<br>COMPANY, J.D. POWER & )<br>ASSOCIATES, and MITCHELL )<br>INTERNATIONAL, INC. )<br>)<br>    Defendants. )<br>_____ ) | IN THE COURT OF COMMON PLEAS<br>FOR THE FIRST JUDICIAL CIRCUIT<br><br>CASE NO.: 2019-CP-38-01397<br><br>**AMENDED COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiff Charmaine Wearing, individually and on behalf of those similarly situated ("Plaintiff"), by and through undersigned counsel, complains of Defendants Progressive Direct Insurance Company ("Progressive"), J.D. Power & Associates ("J.D. Power"), and Mitchell International, Inc. ("Mitchell") (collectively, "Defendants"), and alleges:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1. Plaintiff Charmaine Wearing is an adult citizen of Eutawville, Orangeburg County, South Carolina.

2. Plaintiff brings this action in her individual capacity and on behalf of a Class of all other persons similarly situated in the state of South Carolina.

3. Defendant Progressive is incorporated under the laws of the state of Ohio with its principal place of business in Mayfield, Ohio. Progressive issued an automobile liability insurance policy, including coverage for first-party total loss claims, to Plaintiff that was in force on the date of the total loss at issue.

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

4.      Defendant J.D. Power is incorporated under the laws of the state of Delaware and has its principal place of business in Westlake, California.

5.      Defendant Mitchell is incorporated under the laws of the state of Delaware and has its principal place of business in San Diego, California.

6.      This Court has personal jurisdiction over Defendants pursuant to S.C. Code § 36-2-802, because Defendants have an enduring relationship with the state of South Carolina. Defendants have sufficient minimum contacts with the state of South Carolina and/or otherwise intentionally and purposefully availed themselves of the privilege of conducting business in South Carolina by providing products and services to residents of South Carolina and deriving substantial revenue from products and services sold in South Carolina. Accordingly, the exercise of personal jurisdiction over Defendants complies with judicial notions of fair play and substantial justice.

7.      Venue is proper pursuant to S.C. Code §15-7-30 because Plaintiff resided in Orangeburg County at the time the cause of action arose.

## NATURE OF THE ACTION

8.      This South Carolina Class Action arises from Defendants' systemic and intentionally wrongful and improper scheme to under-value total losses involving the vehicles of Progressive first-party insureds.

9.      Through its auto insurance policy contracts, Progressive has agreed to provide, *inter alia*, collision coverage for losses resulting from damage to insureds' vehicles. The Progressive Policy provides for adjustment and settlement of first-party total loss claims on the basis of actual cash value or replacement.

10.     Progressive has spent many tens of millions of dollars to market itself as a fair and honest insurance company. However, Progressive and its co-conspirators, J.D. Power and

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

Mitchell, are not fair and honest in providing valuations to Progressive insureds whose vehicles have been involved in an accident and are determined to be a total loss.

11.    As alleged hereafter, J.D. Power and Mitchell have formed a joint partnership to provide total loss valuation reports to insurers such as Progressive. J.D. Power and Mitchell call these reports "WorkCenter™ Total Loss Vehicle Valuation Reports" ("WCTL Reports").

12.    Typically, insurers contract with Mitchell to receive the WCTL Reports, which are prepared by this joint partnership.

13.    Progressive has contracted with Mitchell to receive such WCTL Reports. Through this joint partnership and Mitchell's agreement with Progressive, Progressive, Mitchell, and J.D. Power have engaged in a scheme to artificially deflate the value of first-party total loss claims to pay insureds substantially less than the actual pre-loss cash value of their total loss vehicles.

14.    Plaintiff and the putative Class are Progressive automobile insurance Policy holders whose vehicles Progressive determined to be a total loss, and who have been subject to the Progressive, J.D. Power, and Mitchell's scheme to artificially deflate the value of, and under-pay, their total loss claims.

15.    When Progressive entered into the Policies at issue in this case with Plaintiff and Class Members, Progressive knew, but failed to disclose to Plaintiff and the Class, that the WCTL Reports would wrongfully under-value their total loss vehicles. Through this scheme, Progressive, J.D. Power, and Mitchell have engaged in unlawful conduct in violation of South Carolina law, common law, and their respective contractual obligations, which has uniformly damaged Progressive insureds in South Carolina in a readily ascertainable dollar amount.

3

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

## GENERAL FACTUAL ALLEGATIONS

### A.    Plaintiff's Progressive Policy and Plaintiff's Total Loss

16.    Plaintiff was the owner of a 2012 Ford Fusion SEL (the "Vehicle").

17.    Progressive issued its Automobile Policy No. 916349359 (the "Policy") to Plaintiff, which insured the Vehicle. That Policy was in effect in May 2019.

18.    Following an automobile accident on May 7, 2019, Progressive determined that Plaintiff's Vehicle was a total loss.

19.    The terms of the Policy are not individualized, unique, or specific to Plaintiff. Plaintiff's Policy is the same standard form issued by Progressive to insureds throughout the state of South Carolina.

20.    Plaintiff's Policy requires Progressive to pay the "actual cash value" of the total loss vehicle.

21.    J.D. Power and Mitchell provided Progressive with a WCTL Report for Plaintiff's Vehicle on or about May 13, 2019 ("Plaintiff's Report"). A true and correct copy of Plaintiff's WCTL Valuation Report is attached and incorporated herein as Exhibit A.

22.    As reflected by Plaintiff's Report, WCTL Reports first calculate a purported Base Value. The Report then makes purported adjustments for "condition" ("Condition Adjustment"), prior damage, aftermarket parts, and refurbishment that are deducted from Base Value to calculate Market Value. The great majority of WCTL Reports include a downward Condition Adjustment.

23.    Plaintiff's Report purports to state a Base Value for her Vehicle in the amount of $7,647.24 and a Market Value of $6,318.18 after a negative Condition Adjustment in the amount of $1,379.06 (before applying her deductible in the amount of $500.00). The Market Value in

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

Plaintiff's WCTL Report wrongly deprived her of $1,379.06 based upon the downward Condition Adjustment, which is statistically invalid.

24. In addition, the Base Value from which the Condition Adjustment amount was deducted is also based on statistically invalid WCTL methodology, as alleged *infra*. Accordingly, the actual cash value of Plaintiff's Vehicle is substantially and improperly understated as a result of the statistically invalid WCTL Report.

25. Plaintiff's Report failed to properly value Plaintiff's Vehicle and did not properly pay the actual cash value that Progressive owed to Plaintiff.

26. As a direct result of statistically invalid WCTL Reports, Progressive has intentionally and materially underpaid the total loss claims of Plaintiff and the Class Members.

**B.** **The Mitchell and J.D. Power Partnership and WCTL Methodology**

27. Mitchell and J.D. Power entered into a joint partnership to provide WCTL Reports to insurers, including Progressive.

28. The partnership between Mitchell and J.D. Power is described as follows in each of the WCTL Reports:

> WorkCenter Total Loss was designed and built in conjunction with J.D. Power's experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D. Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

Exhibit A at p. 8.

29. Additionally, WCTL Reports specifically bear the names of both J.D. Power and Mitchell on the first page of each Report.

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

30.    Each WCTL Report contains a Methodology Explanation (the "Methodology"), which is located on the last page of each WCTL Report. See Exhibit A at 8.

31.    The Methodology assigns actual cash values for total loss vehicles in an amount that is significantly lower than those assigned by published and publicly available valuation models, such as NADA, Black Book, Red Book, and Kelly Bluebook.

32.    The Methodology is explained as a five-step process used to "produce accurate and easy-to -understand vehicle valuations." This five-step process includes:

   Step 1 - Locate Comparable Vehicles

   Step 2 - Adjust Comparable Vehicles

   Step 3 - Calculate Base Vehicle Value

   Step 4 - Calculate Loss Vehicle Adjustments

   Step 5 - Calculate the Base Value

Exhibit A at 8.

33.    None of these steps relating to comparable vehicles, making vehicle adjustments, and calculating base values are based on statistically valid methodologies, algorithms, values, or computations. Each step is, in fact, statistically invalid and does not result in a proper valuation for total loss vehicles in South Carolina.

34.    Specifically, the Methodology for identifying Comparable Vehicles and for making purported "equating" adjustments for equipment, options, and mileage is statistically invalid. (See Steps 1 and 2, which result in "Base Vehicle Value" at Step 3).

35.    The Market Values in the WCTL Valuations are known by Progressive to be regularly, materially, and substantially lower than the values for comparable vehicles, and to deny

6

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

insureds, such as Plaintiff and the Class, a proper cash value amount sufficient for its insureds to purchase a comparable replacement vehicle.

36. The Methodology for making downward Condition Adjustments, which is a major aspect of the fraudulent scheme to under-value total losses, and the other "Vehicle Adjustments" is statistically invalid. (See Step 4).

37. Specifically, the dollar amounts assigned to Condition Adjustments in the WCTL Reports are wholly arbitrary and are not based on any statistical, objective, valid, or verifiable data. Accordingly, all such downward Condition Adjustments are improper in all respects and should be disregarded in properly valuing a Progressive insured's total loss vehicle.

38. The intended and wrongful result of the five steps and sub-steps included in Exhibit A is that total loss vehicles are undervalued, and Progressive insureds' total loss claims are underpaid. This underpayment is a detriment to Progressive insureds, including Plaintiff, and a benefit to Defendants. Rather than paying Plaintiff and Class Members the proper amount for their total loss vehicles, Progressive has retained significant funds in the millions of dollars by underpaying Plaintiff and Class Members for the value of their total loss vehicles.

39. The WCTL Reports routinely provide Progressive total loss vehicle values that are *not intended* to yield an appropriate Actual Cash Value for Plaintiff's Vehicle or comparable vehicles, but are calculated to yield a substantially lesser and improper amount.

40. The substantial majority of Progressive's first-party total loss claims in South Carolina are settled on the basis of the WCTL Valuations.

**C.     Progressive's Use of the Unlawful WCTL Valuations**

41. Progressive contracted with Mitchell to receive the WCTL Reports prepared by the J.D. Power/Mitchell partnership.

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

42.     Mitchell provided Progressive with WCTL Reports for the total loss vehicles of the Plaintiff and the Class.

43.     Progressive has a regular practice of knowingly and falsely informing insureds that the WCTL Reports properly establish Actual Case Value and provide the basis for proper payment of total loss claims under Progressive Policies in South Carolina.

44.     Progressive has the regular and systemic claims practice of demanding that insureds settle total loss claims based upon the WCTL Reports and refusing to negotiate the Market Values in the Reports with the insureds.

45.     Progressive has actual knowledge that the WCTL Methodology is statistically invalid and unlawful.

46.     Progressive has suppressed and concealed material facts relating to WCTL's Market Valuation System and its pre-existing scheme in conspiracy with J.D. Power and Mitchell to intentionally undervalue total loss claims, including those of Plaintiff and the Class. Specifically, Progressive concealed from Plaintiff that its purported total loss valuations were based upon the statistically invalid and unlawful WCTL Valuation Methodology.

47.     Plaintiff and the Class Members have been damaged by Progressive's systemic underpayment of total loss claims.  This underpayment results from Progressive's intentional failure to fairly and properly determine Actual Cash Value and its knowingly improper downward Condition Adjustments.

48.     Progressive has knowingly and intentionally acted in bad faith towards its South Carolina insureds in regularly and routinely utilizing WCTL Reports to adjust total loss claims.

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

**D.    Guidebook Values**

49.    Other entities involved in the automobile business, such as new and used car dealers, and banks and other lending institutions, do not use WCTL Reports as a basis for determining a fair valuation or Actual Cash Value of used vehicles.

50.    Such entities have historically used industry-recognized guidebooks as sources for proper used vehicle valuation ("Guidebooks"). These Guidebooks include NADA, Kelly Blue Book, and Black Book. These Guidebooks are a proper source for determining Actual Cash Value. Insurers, including Progressive, know that Guidebook values are usually substantially higher than WCTL values.

51.    Until about twenty years ago, insurers also used Guidebooks for the purpose of determining proper valuations to adjust total loss claims.

52.    Insurers typically declare a vehicle to be a total loss if the estimated repair costs exceed either the pre-loss value of the vehicle or a percentage (such as 80%) of the pre-loss vehicle valuation.

53.    Classifying a vehicle as a repair rather than a total loss saves insurers substantial claims dollars because repair cost typically is less than the pre-loss value of the vehicle. Thus, it is in the insurer's economic interest to establish a higher value of the vehicle when classifying a vehicle as either a repair or a total loss, so that the cost of repair is a smaller percentage of the pre-loss vehicle valuation and the vehicle is less likely to be a total loss.

54.    A number of years ago, insurers, including Progressive, determined that they could save many millions of dollars by adjusting total loss claims based upon third-party valuations prepared by either J.D. Power/Mitchell or another third-party valuation company, CCC Information Services ("CCC"). It is clear bad faith to use Guidebook Values to attempt to classify

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

a damaged vehicle as a repair to avoid the higher cost of a total loss, but then use WCTL to reduce the cost of a total loss.

55.     Accordingly, in the last twenty years, many insurers have adopted the regular practice of using WCTL or CCC valuations of total loss vehicles to adjust total loss claims, and disregarding the historically-recognized Guidebooks as a source of valuation, to improperly save millions of dollars.

56.     The WCTL Reports are not used or recognized by any other "player" in the automobile industry, including dealers or lending institutions.

**E.     Progressive Has Waived and is Estopped from Asserting the Appraisal Provision**

57.     **Progressive's Preexisting Appraisal Scheme:**  During the relevant time period, Progressive had, and continues to have, a standard practice of refusing to negotiate the Base Vehicle Value and Adjusted Vehicle Value as reflected in the WCTL Reports unless WCTL has, for example, omitted an option.  Specifically, Progressive has a regular practice of refusing to negotiate in good faith with respect to comparable vehicles, mileage adjustments for comparable vehicles, condition adjustments to the specific total loss vehicle, or comparable vehicle condition adjustments.  Specifically, Progressive typically will not negotiate either the Base Vehicle Value or Market Values of total loss vehicles.

58.     Progressive knows that its insureds typically have no practical choice other than to accept the total loss payment offered by Progressive simply because the insured needs the money to purchase a replacement vehicle.

59.     Further, an insured cannot wait on the appraisal process.  Progressive also has a regular practice of threatening to withdraw its offer to pay a total loss if the insured requests an

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

appraisal. An appraisal process, including selection of an umpire, may take forty-five (45) days or more.

60.     This threat of withdrawal of its offer, combined with delay and expense to the insured of an appraisal, as alleged below, present bad faith obstacles to a fair appraisal. Progressive simply "stands pat" unless it is sued.

61.     Progressive knows that if it insists on "standing" on the WCTL Valuation, the great majority of insureds will simply capitulate and take the Progressive total loss payment.

62.     Progressive also had, and continues to have, a regular practice of not demanding an appraisal unless and until an insured files a lawsuit. Progressive does not include the appraisal provision in its Policies for the appropriate purpose of a cheap and efficient resolution, on a timely basis, of disputed first-party total loss claims. As stated, even where there is a clear and material dispute with an insured, Progressive does not demand an appraisal unless a lawsuit is filed.

63.     **Prejudice to Plaintiff and Other Insureds:** Progressive's scheme to not invoke the appraisal unless and until there is litigation materially prejudices Progressive insureds, including Plaintiff, in several material ways.

64.     First, Progressive typically sells the salvaged total loss vehicle to one of two companies, Copart, Inc. or Insurance Auto Auctions, Inc. ("IAA"). These companies pay a salvage value to Progressive and then market salvaged parts from total loss vehicles. The total loss vehicle is typically sold by Progressive and salvaged for spare parts in thirty (30) to forty-five (45) days after the total loss.

65.     Progressive has actual knowledge that if an insured disputes Progressive's total loss payment but does not demand an appraisal, the total loss vehicle will be unavailable for inspection and appraisal after such salvage. Thus, Progressive knows that if it does not request an appraisal

11

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

for months or even years, and then does so only if and when litigation is filed against Progressive, the total loss vehicle will be unavailable for physical inspection and appraisal. Plaintiff's Vehicle, of course, has been salvaged and is not available for an inspection.

66.     Progressive also knows that industry-recognized information regarding comparable used vehicles listed for sale at the time of a loss from sources such as AutoTrader and Cars.com is no longer current after about ninety (90) days.

67.     The only possible appraisal after the vehicle has been salvaged is what is known in the industry as a "desktop" appraisal, which is based upon the limited information available a year or two years after the total loss.

68.     The prejudice to insureds such as Plaintiff is clearly illustrated by the information regarding the "vehicle condition," which is listed in WCTL Reports. See Exhibit A at 4. Consistent with J.D. Power/Mitchell's standard practice, WCTL Reports list purported "component condition" for "interior" (including headliner, glass, dash/console, seats, and carpet), "exterior" (including body vinyl/convertible top, trim, and paint), "mechanical" (including engine and transmission), and "tires."

69.     When the vehicle is unavailable at the time Progressive demands an appraisal, it is impossible to fairly review the actual condition of each of the listed "component" conditions based upon an inspection. Thus, Plaintiff has been deprived of the right to a proper inspection-based appraisal as a result of Progressive's delay and the salvage of her Vehicle.

70.     **Cost as a Deterrent to an Appraisal**: In addition, the fact that the appraisal provision requires the insured to pay for the cost of an appraiser and share the expense of a third-party umpire is intended by Progressive to be, and is, in fact, a significant and improper deterrent to insureds such as Plaintiff with regard to invoking the appraisal provision, because the cost to

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

Plaintiff of an in-person inspection by an appraiser, and the fees and expenses of a third-party umpire, may well exceed $1,000.

71.     For all of these reasons, based upon its pre-existing scheme regarding untimely utilization of the appraisal provision and the clear prejudice to insureds such as Plaintiff, Progressive (and J.D. Power/Mitchell) have waived, and are estopped from invoking, the appraisal provision in Plaintiff's Policy.

## CLASS ALLEGATIONS

72.     Plaintiff brings this class action individually and on behalf of all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the South Carolina Rules of Civil Procedure:

> All persons and entities that made first-party claims from October 10, 2016 through October 10, 2019 under an automobile insurance policy issued within the State of South Carolina by Progressive and whose vehicles were declared a total loss by Progressive and were valued using WCTL's total loss valuation system.

Excluded from the Class are:

a.     Defendants, all related entities, subsidiaries, or affiliates of Defendants, any entity in which Defendants have a controlling interest, and any and all of Defendants' employees, affiliates, legal representatives, heirs, successors, or assignees;

b.     Any person or entity that has previously commenced and resolved a lawsuit against Defendants arising out of the subject matter of this lawsuit; and

c.     The judge assigned to this case and any member of the judge's immediate family.

73.     **The Condition Adjustment Subclass:** This Subclass consists of all South Carolina insureds whose total loss claims were reduced by negative or downward Condition Adjustments.

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

74.    **The Base Value Subclass:** This Subclass consists of all South Carolina insureds whose vehicles received WCTL Reports with Adjusted Vehicle Values that were less than Actual Cash Value as established by Guidebooks.

75.    **Numerosity:** The Class is so numerous that joinder of all affected persons would be impracticable. Although the exact number of Class Members is unknown to Plaintiff, the Class is estimated to consist of many thousands of people who have sustained total losses to their vehicles while insured by Progressive.

76.    **Commonality:** Numerous questions of law and fact are common to Plaintiff and the Class and predominate over any individual questions. These legal and factual questions include, but are not limited to:

a.    Whether Progressive failed to properly investigate and determine that WCTL Valuations are statistically invalid;

b.    Whether Progressive had actual knowledge that WCTL Valuations are statistically invalid;

c.    Whether South Carolina law required Progressive to pay actual cash value to its South Carolina insureds;

d.    Whether Progressive's Policy required it to pay actual cash value to its South Carolina insureds.

e.    Whether Progressive breached its contracts of insurance with its South Carolina insureds by improperly underpaying total loss claims through the use of statistically invalid WCTL Valuations;

f.    Whether Progressive failed to pay actual cash value to its South Carolina insureds;

14

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

g.      Whether WCTL Valuations properly calculate the actual cash value of total loss vehicles at the time of the loss;

h.      Whether Progressive has intentionally and systemically underpaid total loss claims to Plaintiff and the Class by using statistically invalid WCTL Valuations;

i.      Whether Plaintiff and the Class have sustained damages;

j.      Whether Defendants have been unjustly enriched as a result of the scheme described herein; and

k.      Whether Defendants have conspired as alleged herein.

77.     **Typicality:** Plaintiff's claims are typical of the claims of the Class Members, as Plaintiff and all Class Members have suffered damages as a result of Defendants' unlawful and deceptive scheme of settling total loss vehicle claims for substantially less than the actual replacement costs of such vehicles. Specifically, the total loss claims of the Class Members were adjusted by Progressive based upon WCTL Valuations. The same discovery and evidence that would be used to support Plaintiff's claims will be used to support the claims of the Class Members.

78.     **Adequacy of Representation:** Plaintiff will fully and adequately represent and protect the interests of the Class Members because they share common injuries as a result of Defendants' conduct that is applicable to all Class Members. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests that are contrary to or in conflict with those of the Class they seek to represent.

15

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

79.     **Predominance and Superiority:** This Action is properly maintained as a class action because questions of law and fact common to Plaintiff's claims and the claims of the Class Members predominate over questions of law and fact affecting only individual Class Members, such that a class action is superior to other methods for the fair and efficient adjudication of this controversy. The issues in relation to Plaintiff's claims are similar to the issues relating to the claims of the other Class Members, such that a class action provides a far more efficient vehicle to resolve the claims than a myriad of separate lawsuits. Accordingly, for most Class Members, a class action is the only mechanism by which they could reasonably expect to vindicate their rights. Certification of the Class is also supported by the following considerations:

a.     The relatively small amount of damages that Class Members have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b.     Counsel in this class action are not aware of any earlier litigation against Defendants to which any other Class Members are a party and in which any question of law or fact controverted in the subject action is to be adjudicated;

c.     By virtue of Defendants' efforts to conceal their scheme, many Class Members may not even be aware they have a claim;

d.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action;

e.     Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants and further the efficient adjudication of Class Member claims; and

f.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

## A.    Damages Calculations for the Class

80.    Calculation of Class damages is readily manageable. Progressive maintains specific information in its electronic database relating to first-party total loss claims identifying each claim and the amount of any negative or downward Condition Adjustment on each claim.

81.    In addition, Progressive maintains aggregate data on the total amount of negative or downward Condition Adjustments in South Carolina (and other states) on an annual basis.

82.    Accordingly, when the Class establishes that all of the Progressive negative or downward Condition Adjustments are statistically invalid, each Class Member will be entitled to a refund in the full amount of any such Condition Adjustment. As stated, that amount can be readily determined on an individual basis for each Progressive first-party insured as well as on an aggregate basis.

83.    All of the damages claimed in this action on a Class-wide basis are readily and easily ascertainable from the Progressive electronic database relating to its South Carolina total loss claims.

84.    Defendants have acted, or refused to act, in a manner that applies generally to the Class, such that final injunctive relief is appropriate as to the Class as a whole.

### FOR A FIRST CAUSE OF ACTION
### Breach of Contract
### (Against Progressive)

85.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

86.    The Progressive Policy issued to Plaintiff constitutes a valid and binding contract.

87.    Progressive has breached its Policy with Plaintiff in multiple ways, resulting in the material underpayment of Plaintiff's total loss claim, which include, but are not limited to: (a)

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

failure to properly investigate and confirm the statistical validity of the WCTL Valuation Methodology; (b) improper delegation of its obligation to value total loss vehicles, including Plaintiff's Vehicle, to WCTL; and (c) wrongful failure to properly adjust and pay the amounts due and owed to Plaintiff for her total loss vehicle sufficient for Plaintiff to obtain a comparable replacement vehicle.

88.    Specifically, Progressive has failed to pay Actual Cash Value as required by its Policy to Plaintiff and to Class Members.

89.    Progressive's breach proximately caused Plaintiff's actual damages and the actual damages of the Class. Thus, Progressive is liable for actual, consequential, and incidental damages flowing from its breach of the Policy, as well as any other such damages, costs, or attorneys' fees to which Plaintiff may be entitled under South Carolina law.

90.    This claim applies to all Class Members.

**FOR A SECOND CAUSE OF ACTION**
**Breach of Contract Accompanied by Fraudulent Act**
**(Against Progressive)**

91.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

92.    Progressive's breach of contract was accompanied by multiple fraudulent acts and fraudulent intent as more fully alleged in ¶¶ 10-15, 27-40 and 41-48, which are specifically incorporated in this cause of action.

93.    These actions of Progressive are characterized by dishonesty in fact and unfair dealing.

94.    When Progressive issued the Policy to Plaintiff, Progressive had been using WCTL to adjust total loss claims in South Carolina for a number of years.

18

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

95.      Progressive had the actual fraudulent intent to improperly adjust all South Carolina total losses based upon WCTL Reports for the specific purpose of intentionally cheating Plaintiff and the Class Members and materially underpaying total loss claims in a uniform and specific way.

96.      Progressive's breach of contract accompanied by fraudulent acts proximately caused Plaintiff's actual damages and the actual damages of the Class. Thus, Progressive is liable for compensatory and punitive damages, as well as any other such damages, costs, or attorneys' fees to which Plaintiff may be entitled under South Carolina law.

97.      This claim applies to all Class Members.

## FOR A THIRD CAUSE OF ACTION
### Bad Faith
### (Against Defendant Progressive)

98.      Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

99.      The Policies obligated Progressive to properly and reasonably investigate the fair value of the total losses sustained by each insured, including Plaintiff, and then pay that amount in a timely manner. The Policies also obligated Progressive to act in good faith and to deal fairly with Plaintiff in handling and adjusting her total loss claim.

100.      Instead of properly investigating and paying Plaintiff's total loss claim, Progressive contracted with J.D. Power and Mitchell and utilized the WCTL Valuations for the wrongful and bad faith purpose of intentionally and improperly reducing total loss payments to Plaintiff and the Class Members in an improper attempt to save money at the expense of Progressive insureds, including Plaintiff and the Class Members.

101.      Progressive has actual knowledge that the WCTL Valuation Methodology is statistically invalid.

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

102.    Progressive's conduct in "low balling" Plaintiff's claim, intentionally undervaluing Plaintiff's claim, and withholding the full value of that claim is unreasonable and unjustifiable under the circumstances and constitutes bad faith under South Carolina law.

103.    Progressive has acted in bad faith in adjusting Plaintiff's claim and the total loss claims of Class Members in a systemic and uniform manner by making statistically invalid downward Condition Adjustments based upon WCTL Valuations.

104.    Plaintiff has suffered damages as a direct and proximate result of such unreasonable, bad faith conduct on the part of Progressive and is, therefore, entitled to recover compensatory and punitive damages, as well as any other such damages, costs, or attorneys' fees to which Plaintiff may be entitled under South Carolina law.

105.    This claim applies to all Class Members.

### FOR A FOURTH CAUSE OF ACTION
### Tortious Interference with Performance of a Contract
### (Against Defendants J.D. Power and Mitchell)

106.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

107.    The Policies obligated Progressive to properly investigate the value of Plaintiff's total loss claim using a fair and statistically valid valuation system or methodology, and then to properly pay Plaintiff the appropriate value of her total loss.

108.    At all times relevant hereto, and based on Mitchell's contract with Progressive to provide WCTL Reports, J.D. Power and Mitchell knew that Progressive entered into the Policies with its insureds and that the Policies obligated Progressive to promptly and properly pay total loss claims.

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

109.     J.D. Power and Mitchell had actual knowledge of the identity of Plaintiff and each Class Member as Progressive insureds.  This knowledge is demonstrated by the fact that J.D. Power and Mitchell prepared the Plaintiff's WCTL Report, which specifically identified Plaintiff and valued Plaintiff's vehicle.  The same is true for the WCTL Reports of the other Class Members.

110.     J.D. Power and Mitchell had actual knowledge that Progressive used the WCTL Valuations to adjust the total loss claims of Plaintiff and the Class Members.

111.     J.D. Power and Mitchell also had actual knowledge that Progressive typically would refuse to increase total loss valuations beyond the WCTL Valuations and that Progressive settled the substantial majority of its total loss claims based upon WCTL Valuations provided by J.D. Power and Mitchell.

112.     J.D. Power and Mitchell wrongfully interfered with Progressive's contractual obligations to Plaintiff by knowingly and intentionally selling to Progressive a statistically invalid and wholly arbitrary total loss valuation product for the specific purpose of enabling Progressive to underpay the claims of total loss insureds, including Plaintiff.

113.     Progressive's breaches that were caused by J.D. Power and Mitchell's unjustified, intentional, and malicious interference with Plaintiff's contractual rights under the Policy include:

      a.     failing to properly value Plaintiff's total loss;

      b.     using arbitrary and statistically invalid methodology to value Plaintiff's total loss claim; and

      c.     causing Progressive to fail to pay the proper amount due and owed to Plaintiff.

114.     Plaintiff suffered damages as a proximate result of J.D. Power and Mitchell's improper WCTL Valuations and resulting tortious interference with the contractual relationship

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

between Progressive and Plaintiff and the Class. Therefore, Plaintiff is entitled to recover compensatory and punitive damages, as well as any other such damages, costs or attorneys' fees to which she may be entitled under South Carolina law.

115.    This claim applies to all Class Members.

### FOR A FIFTH CAUSE OF ACTION
**Breach of Contract Arising from Plaintiff's Status as Third-Party Beneficiary of the Agreement between J.D. Power/Mitchell and Progressive**
**(Against Defendants J.D. Power and Mitchell)**

116.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 84 as though fully set forth herein.

117.    At all times relevant hereto, Mitchell, through its joint venture with J.D. Power, contracted to provide Progressive with total loss valuations (the "Agreement"). The intended purpose of this Agreement was to outsource Progressive's valuation of total loss claims for the purpose of satisfying Progressive's obligations to value and pay total loss claims.

118.    As insureds for whom valuations were prepared under this Agreement, Plaintiff and the Class Members are intended beneficiaries of the Agreement and are entitled to sue for breach of that Agreement.

119.    Plaintiff alleges J.D. Power and Mitchell breached this Agreement by providing Progressive with total loss valuations that were not statistically valid and were wholly arbitrary in the manner in which they valued total losses, including Plaintiff's total loss. The improper WCTL Valuations were supplied to Progressive by Mitchell in the course of business for the purported direct benefit of Plaintiff and the Class Members.

120.    Mitchell's breach of its Agreement to provide valid total loss valuations to Progressive proximately caused damage to Plaintiff. Mitchell is, therefore, liable to Plaintiff as an intended third-party beneficiary for actual, consequential, and incidental damages flowing from its

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

breach of the Agreement, as well as any other such damages, costs, or attorneys' fees to which Plaintiff may be entitled under South Carolina law.

121.    J.D. Power is likewise liable for Mitchell's breach of the Agreement based upon its actual involvement with the WCTL Valuation Methodology and its partnership with Mitchell.

122.    This claim applies to all Class Members.

## Prayer for Relief

**WHEREFORE,** Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Honorable Court:

A.    Certify the Class alleged herein;

B.    Appoint Plaintiff as Class Representative;

C.    Appoint the undersigned as Class Counsel;

D.    Award Plaintiff and Class Members actual damages in such amount as the Court or jury may determine;

E.    Award declaratory and injunctive relief as permitted by law;

F.    Award punitive damages as permitted by law;

G.    Award reasonable attorneys' fees, filing fees, expert fees, litigation costs, and expenses to counsel based upon the benefit received by Plaintiff and the Class; and

H.    Award Plaintiff and Class Members any additional relief as this Court deems just and proper, including injunctive relief to prohibit Progressive from continuing to utilize WCTL Valuations in South Carolina.

ELECTRONICALLY FILED - 2019 Oct 11 4:30 PM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all causes of action for which a trial by jury is permitted by law.

Respectfully submitted,

s/ *James L. Ward, Jr.*
James L. Ward, Jr. (SC Bar No. 13453)
**MCGOWAN, HOOD & FELDER, LLC**
321 Wingo Way, Suite 103
Mt. Pleasant, SC 29464
Telephone: (843) 388-7202
jward@mcgowanhood.com

Jonathan H. Waller*
**WALLER LAW OFFICE, PC**
2001 Park Place, Suite 900
Birmingham, AL 35203
Telephone: (205) 313-7330
jwaller@waller-law.com

*Attorneys for Plaintiff and the proposed Class*

**Pending pro hac vice admission*

October 11, 2019
Mt. Pleasant, South Carolina

24

# Certificate of Electronic Notification

| Recipients |
| --- |
| **James Ward**  - Notification transmitted on 10-29-2019 08:48:45 AM. |

ELECTRONICALLY FILED - 2019 Oct 29 9:01 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:** 2019CP3801397

**Official File Stamp:**              10-29-2019 08:48:31 AM

**Court:**                            CIRCUIT COURT

                                      Common Pleas

                                      Orangeburg

**Case Caption:**                     Charmaine Wearing VS Progressive Group Of
                                      Insurance Companies , defendant, et al

**Document(s) Submitted:**            Affidavit/Affidavit of

                                      Affidavit/Affidavit of

**Filed by or on behalf of:**         James L. Ward, Jr.

This notice was automatically generated by the Court's auto-notification system.

–

**The following people were served electronically:**

                                      James L. Ward, Jr. for Charmaine Wearing

**The following people have not been served electronically by the Court. Therefore, they must be served by traditional means:**

                                      J.D. Power & Associates

                                      Mitchell International, Inc.

                                      Progressive Group Of Insurance Companies

ELECTRONICALLY FILED - 2019 Oct 29 9:01 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

ELECTRONICALLY FILED - 2019 Oct 29 8:48 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397



| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | ) | FOR THE FIRST JUDICIAL CIRCUIT |
| COUNTY OF ORANGEBURG | ) | |
| | ) | |
| CHARMAINE WEARING, individually | ) | CASE NO.: 2019-CP-38-01397 |
| and on behalf of those similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF SERVICE** |
| | ) | |
| vs. | ) | |
| | ) | |
| PROGRESSIVE DIRECT INSURANCE | ) | |
| COMPANY, J.D. POWER & | ) | |
| ASSOCIATES, and MITCHELL | ) | |
| INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF SERVICE BY CERTIFIED MAIL**

James L. Ward, Jr., being first duly sworn, deposes and says of his own personal knowledge:

1.      I am the attorney for Plaintiff in the above-captioned action.

2.      On October 18, 2019, a copy of the Summons and Complaint was deposited in the United States Mail for mailing by certified mail, return receipt requested, addressed to Defendant, Mitchell International, Inc. c/o Agent for Service of Process, CT Corporation System, 2 Office Park Court, Suite 103, Columbia, SC.

3.      On October 21, 2019, the return receipt, which is attached as Exhibit A, was signed indicating that the above-referenced document was in fact received by Defendant Mitchell International, Inc. c/o Agent for Service of Process, CT Corporation System, 2 Office Park Court, Suite 103, Columbia, SC, thereby completing service.

1

ELECTRONICALLY FILED - 2019 Oct 29 8:48 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

4. I have read the foregoing and it is true.

This the ___28th___ day of ___October___, 2019.

_____
James L. Ward, Jr.
**McGOWAN, HOOD & FELDER, LLC**
321 Wingo Way, Suite 103
Mt. Pleasant, SC 29464
843-388-7202
jward@mcgowanhood.com

Attorneys for Plaintiff

SWORN TO AND SUBSCRIBED BEFORE ME
this the ___28th___ day of ___October___, 2019.

_____
Notary Public for South Carolina
My Commission Expires: ___7-18-24___



# EXHIBIT A

ELECTRONICALLY FILED - 2019 Oct 29 8:48 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

ELECTRONICALLY FILED - 2019 Oct 29 8:48 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397





ELECTRONICALLY FILED - 2019 Oct 29 8:48 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

STATE OF SOUTH CAROLINA  ) IN THE COURT OF COMMON PLEAS
             ) FOR THE FIRST JUDICIAL CIRCUIT
COUNTY OF ORANGEBURG   )
             )
CHARMAINE WEARING, individually ) CASE NO.: 2019-CP-38-01397
and on behalf of those similarly  )
situated,          )
             )
       Plaintiff,  ) **AFFIDAVIT OF SERVICE**
             )
  vs.           )
             )
PROGRESSIVE DIRECT INSURANCE )
COMPANY, J.D. POWER &amp;    )
ASSOCIATES, and MITCHELL   )
INTERNATIONAL, INC.     )
             )
       Defendants. )
_____)

## AFFIDAVIT OF SERVICE BY CERTIFIED MAIL

James L. Ward, Jr., being first duly sworn, deposes and says of his own personal

knowledge:

1. I am the attorney for Plaintiff in the above-captioned action.

2. On October 18, 2019, a copy of the Summons and Complaint was deposited in the

United States Mail addressed to Defendant Progressive Direct Insurance Company c/o Director

of the S.C. Department of Insurance, as agent for Progressive Insurance Company.

3. On October 22, 2019, the Director of the S.C. Department of Insurance, as agent

for Progressive Direct Insurance Company, acknowledged receipt by letter, which is attached as

Exhibit A, thereby completing service.

4. I have read the foregoing and it is true.

This the 28th day of October, 2019.

ELECTRONICALLY FILED - 2019 Oct 29 8:48 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

_____
James L. Ward, Jr.
**McGOWAN, HOOD & FELDER, LLC**
321 Wingo Way, Suite 103
Mt. Pleasant, SC 29464
843-388-7202
jward@mcgowanhood.com

Attorneys for Plaintiff

SWORN TO AND SUBSCRIBED BEFORE ME
this the ___28th___ day of ___October___, 2019.



_____
Notary Public for South Carolina
My Commission Expires: ___7-18-24___

# EXHIBIT A

ELECTRONICALLY FILED - 2019 Oct 29 8:48 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397



# South Carolina
# Department of Insurance

**HENRY McMASTER**
*Governor*

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

**RAYMOND G. FARMER**
*Director*

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105
Telephone: (803) 737-6160

October 22, 2019

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
PROGRESSIVE DIRECT INSURANCE COMPANY
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223

Dear Sir:

On October 21, 2019, I accepted service of the attached Amended Summons and Amended Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to sdubois@doi.sc.gov.** When replying, please refer to File Number 176723, Charmaine Wearing , et al. v. PROGRESSIVE DIRECT INSURANCE COMPANY, et al., 2019-CP-38-01397.

By:

David E. Belton
Senior Associate General Counsel
(803)737-6200

Sincerely Yours,

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC:    James L. Ward Jr.
       321 Wingo Way, Suite 103
       Mount Pleasant, SC    29464

ELECTRONICALLY FILED - 2019 Oct 29 8:48 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

# Certificate of Electronic Notification

| Recipients |
| --- |
| **James Ward**  - Notification transmitted on 11-14-2019 10:31:02 AM. |

ELECTRONICALLY FILED - 2019 Nov 14 10:52 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:** 2019CP3801397

**Official File Stamp:**              11-14-2019 10:30:49 AM

**Court:**                            CIRCUIT COURT

                                      Common Pleas

                                      Orangeburg

**Case Caption:**                     Charmaine Wearing VS Progressive Group Of
                                      Insurance Companies , defendant, et al

**Document(s) Submitted:**            Affidavit/Attorney

**Filed by or on behalf of:**         James L. Ward, Jr.

This notice was automatically generated by the Court's auto-notification system.

–

**The following people were served electronically:**

                                      James L. Ward, Jr. for Charmaine Wearing

**The following people have not been served electronically by the Court. Therefore, they must be served by traditional means:**

                                      J.D. Power & Associates

                                      Mitchell International, Inc.

                                      Progressive Group Of Insurance Companies

ELECTRONICALLY FILED - 2019 Nov 14 10:52 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

ELECTRONICALLY FILED - 2019 Nov 14 10:30 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397



| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| | FOR THE FIRST JUDICIAL CIRCUIT |
| COUNTY OF ORANGEBURG | |
| | |
| CHARMAINE WEARING, individually | CASE NO.: 2019-CP-38-01397 |
| and on behalf of those similarly | |
| situated, | |
| | |
| Plaintiff, | **AFFIDAVIT OF SERVICE** |
| | |
| vs. | |
| | |
| PROGRESSIVE DIRECT INSURANCE | |
| COMPANY, J.D. POWER & | |
| ASSOCIATES, and MITCHELL | |
| INTERNATIONAL, INC. | |
| | |
| Defendants. | |

## AFFIDAVIT OF SERVICE BY CERTIFIED MAIL

James L. Ward, Jr., being first duly sworn, deposes and says of his own personal knowledge:

1.      I am the attorney for Plaintiff in the above-captioned action.

2.      On November 04, 2019, a copy of the Summons and Complaint was deposited in the United States Mail for mailing by certified mail, return receipt requested, addressed to Defendant J.D. Powers & Associates, c/o CSA-Lawyers Inc. Services, 2710 Gateway Oaks Drive, Suite 150 N., Sacramento, CA, 95833.

3.      On November 8, 2019, the return receipt, which is attached as Exhibit A, was signed indicating that the above referenced document was in fact received by Defendant J.D. Powers & Associates c/o CSA-Lawyers, Inc. Services, 2710 Gateway Oaks Drive, Suite 150 N., Sacramento, CA 95833, thereby completing service.

4.      I have read the foregoing and it is true.

This the _13th_ day of _November_, 2019.

James L. Ward, Jr.
**McGOWAN, HOOD & FELDER, LLC**
321 Wingo Way, Suite 103
Mt. Pleasant, SC 29464
843-388-7202
jward@mcgowanhood.com

Attorneys for Plaintiff

SWORN TO AND SUBSCRIBED BEFORE ME
this the _13th_ day of _November_, 2019.

Notary Public for South Carolina
My Commission Expires: _7-18-2024_

ELECTRONICALLY FILED - 2019 Nov 14 10:30 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

ELECTRONICALLY FILED - 2019 Nov 14 10:30 AM - ORANGEBURG - COMMON PLEAS - CASE#2019CP3801397

# EXHIBIT A



