**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | |
|---|---|
| **CHARMAINE WEARING, individually and on behalf of those similarly situated,** | Civil Action No. |
| Plaintiff, | 5:19-cv-03264-JMC |
| v. | |
| **PROGRESSIVE DIRECT INSURANCE COMPANY, J.D. POWER & ASSOCIATES, and MITCHELL INTERNATIONAL, INC.,** | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PROGRESSIVE**
**DIRECT INSURANCE COMPANY'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 2

    a.  Plaintiff's Insurance Policy ......................................................................... 2

    b.  Plaintiff's Collision and Insurance Claim .................................................. 3

    c.  Plaintiff's Amended Complaint ................................................................. 4

III. ARGUMENT ..................................................................................................... 5

    a.  Plaintiff Fails to Sufficiently Allege a Breach of Contract. .......................... 6

    b.  Plaintiff's Claim for Breach of Contract Accompanied by Fraudulent Act Fails for Multiple, Independent Reasons. ........................................... 10

    c.  Plaintiff Fails to Allege Conduct Constituting Bad Faith Under South Carolina Law. ....................................................................................... 14

IV. CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Fin. Guaranty Corp. v. City of Buena Vista*,
    917 F.3d 206 (4th Cir. 2019) .................................................................................6

*Advanced Pain Therapies, LLC v. Hartford Fin. Servs. Grp., Inc.*,
    No. 3:14-CV-00050-MGL, 2014 WL 4402800 (D.S.C. Sept. 3, 2014) .............6, 11, 12, 14

*Anand v. Ocwen Loan Servicing, LLC*,
    754 F.3d 195 (4th Cir. 2014) .................................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................6

*Ateyeh v. Volkswagen of Florence, Inc.*,
    341 S.E.2d 378 (S.C. 1986) .................................................................................10

*Bank v. How Mad, Inc.*,
    No. 4:12 CV 3159-RBH, 2013 WL 5566038 (D.S.C. Oct. 8, 2013) ................................6, 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................5, 6

*BMC Distribs. of S.C., LLC v. Nat. Union Fire Ins. Co. of Pittsburgh*,
    No. 12-178-RMG, 2013 WL 11328259 (D.S.C. June 13, 2013)......................................15

*Boldt Co. v. Thomason Elec. & Am. Contractors Indem. Co.*,
    820 F. Supp. 2d 703 (D.S.C. 2007)........................................................................7

*Brown v. State Farm Mut. Ins. Co.*,
    269 S.E.2d 769 (S.C. 1980) .................................................................................2, 16

*Capital Corp. of Am., Inc. v. Teays River Invs., LLC*,
    No. 6:11-2796-HMH, 2012 WL 13006190 (D.S.C. Feb. 1, 2012)...................................10

*Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*,
    466 S.E.2d 727 (S.C. 1996) .................................................................................14

*Collins v. Auto-Owners Ins. Co.*,
    438 F. App'x 247 (4th Cir. 2011) .......................................................................15

*Collins v. Auto-Owners Ins. Co.*,
    759 F. Supp. 2d 728 (D.S.C. 2010)........................................................................14

*Crossley v. State Farm Mut. Auto. Ins. Co.*,
    415 S.E.2d 393 (S.C. 1992) .................................................................................15

*Dowling v. Home Buyers Warranty Corp., II*,
  400 S.E.2d 143 (S.C. 1991) ........................................................................................ 14

*FDIC v. Prince George Corp.*,
  58 F.3d 1041 (4th Cir. 1995) ........................................................................................ 7

*Floyd v. Country Squire Mobile Homes, Inc.*,
  336 S.E.2d 502 (S.C. Ct. App. 1985) .......................................................................... 13

*Fuller v. E. Fire & Cas. Ins. Co.*,
  124 S.E.2d 602 (S.C. 1962) ........................................................................................... 6

*Harper v. Ethridge*,
  348 S.E.2d 374 (S.C. Ct. App. 1986) ..................................................................... 10, 11

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ........................................................................................ 6

*U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*,
  352 F.3d 908 (4th Cir. 2003) ...................................................................................... 12

*Henry v. Gov't Emps. Ins. Co.*,
  275 F. Supp. 3d 750 (D.S.C. 2017) ............................................................................. 16

*Mincey v. World Savings Bank, FSB*,
  614 F. Supp. 2d 610 (D.S.C. 2008) ............................................................................. 11

*Minter v. GOCT, Inc.*,
  473 S.E.2d 67 (S.C. Ct. App. 1996) ...................................................................... 11, 13

*Moss v. Minn. Life Ins. Co.*,
  No. 4:15-cv-1679-BHH, 2017 WL 5635449 (D.S.C. Mar. 29, 2017) ............................... 16

*Neuman v. Levan*,
  No. 8:08-03418-HFF, 2009 WL 1856569 (D.S.C. June 26, 2009) ......................... 6, 12, 13

*PTA-FLA, Inc. v. ZTE Corp.*,
  No. 3:12-cv-02616-CMC, 2015 WL 13593694 (D.S.C. July 27, 2015) ............................ 11

*Richardson v. Progressive Select Ins. Co.*,
  No. 2:18-cv-715-FtM-99MRM, 2019 WL 2287955 (M.D. Fla. May 29,
  2019) ......................................................................................................................... 7, 8

*Singleton v. City of Georgetown*,
  No. 2:15-02579-DCN, 2017 WL 570007 (D.S.C. Feb. 13, 2017) ................................... 11

*Smith v. Canal Ins. Co.*,
  269 S.E.2d 348 (S.C. 1980) ..................................................................................... 10, 12

*Snider v. Nautical Mgmt. Reciprocal Insurers*,
    No. 88-1394, 1991 WL 209822 (4th Cir. Oct. 21, 1991) .................................................. 14

*Thompson v. Brown*,
    No. 7:19-cv-02504-TMC-JDA, 2019 WL 6255829 (D.S.C. Oct. 3, 2019) ..................... 7, 8

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ............................................................................................ 12

# I.    INTRODUCTION

Plaintiff—a Progressive Direct insured—asserts an assortment of claims against Progressive Direct, J.D. Power & Associates ("J.D. Power"), and Mitchell International, Inc. ("Mitchell") related to the valuation of her total loss vehicle. Yet, Plaintiff's Amended Complaint contains only a single paragraph regarding Progressive Direct's valuation of her total loss claim and does not even allege what Plaintiff claims to be the value of her total loss automobile. All Plaintiff alleges, in a vague and conclusory manner, is that WorkCenter Total Loss ("WCTL"), the valuation methodology used by Progressive Direct, is "statistically invalid" and thus Progressive Direct "wrongfully under-valued" Plaintiff's total loss vehicle. Plaintiff does not allege, however, the allegedly accurate value of her vehicle or identify any errors in the valuation report she was provided by Progressive Direct. Indeed, Plaintiff does not even allege what Progressive Direct offered to pay her for her vehicle, or if she accepted that payment. The vague allegations in the Amended Complaint are insufficient to sustain any of Plaintiff's claims.

*First*, the Amended Complaint does not allege the facts necessary to state a breach of contract claim under South Carolina law. While Plaintiff vaguely alleges Progressive Direct undervalued her vehicle, that is not enough—standing alone—to establish that Progressive Direct breached any specific obligation in her automobile insurance policy (the "Policy"). Indeed, Plaintiff does not allege (1) how much Progressive Direct offered to pay Plaintiff for her total loss, (2) how much Plaintiff contends Progressive Direct should have offered her, or (3) whether Plaintiff accepted any offer that was made. These are critically important facts Plaintiff must allege to state a plausible claim for relief under South Carolina law. Absent these allegations, Plaintiff's breach of contract claim fails.

*Second*, Plaintiff's claim for breach of contract accompanied by fraudulent act fails by virtue of her failure to allege of a breach of contract. But even if Plaintiff sufficiently alleged a

1

breach of the Policy, she fails to allege that Progressive Direct fraudulently intended to breach the Policy. Nor does she plead that Progressive Direct committed a fraudulent act accompanying the breach that is separate and distinct from the alleged breach. Finally, to the extent Plaintiff has included vague and conclusory allegations of fraud, those allegations are woefully insufficient to satisfy Rule 9(b)'s heightened pleading standard. Thus, this claim also fails.

*Third*, the Amended Complaint does not include any facts that, if true, would demonstrate that Progressive Direct's conduct in settling Plaintiff's claim rises to the level of bad faith in South Carolina. Nothing in the Amended Complaint suggests that Progressive Direct's use of WCTL is unreasonable or nonsensical—as required by South Carolina law to establish bad faith. In fact, valuing total loss vehicles by using data relating to comparable vehicles—which Plaintiff concedes is the method used by WCTL—has been accepted in South Carolina. *Brown v. State Farm Mut. Ins. Co.*, 269 S.E.2d 769, 77-71 (S.C. 1980). At most, the allegations in the Amended Complaint reflect a disagreement between Plaintiff and Progressive Direct regarding the value of Plaintiff's vehicle, which is insufficient to state a bad faith claim.

For these reasons, as stated more fully below, the claims in the Amended Complaint should be dismissed for failure to state a claim.

## II.     BACKGROUND

### a.  Plaintiff's Insurance Policy

Progressive Direct insured Plaintiff pursuant to the terms and conditions of the Policy. Am. Compl. ¶¶ 1-3. Plaintiff's Policy provides that Progressive Direct agreed to "pay for sudden, direct and accidental loss" to a covered vehicle. Policy at 16.[1] If a covered vehicle is determined to be a

---

[1] A true and correct copy of Plaintiff's insurance policy is attached hereto as Exhibit 1. The Court may consider the Policy without converting this Motion to Dismiss into a motion for summary judgement because the Policy is central to Plaintiff's claims, *see, e.g.*, Am. Compl. ¶¶ 3, 9, 17, 19,

"total loss," the Policy requires Progressive Direct to pay for the insured's loss, subject to the limitation of liability provision in the Policy. The limitation of liability provision in the Policy provides that Progressive Direct will pay the "lowest of:" (1) the "actual cash value" of the vehicle; (2) the "amount necessary to replace" the vehicle; (3) the amount necessary to repair the vehicle to its pre-loss condition; or (4) the "limit of liability shown on the declarations page." Policy at 14-15. Actual cash value is "determined by the market value, age, and condition of the vehicle at the time the loss occurs." *Id.* at 22. The Policy also states that Progressive Direct "may use estimating, appraisal, or injury evaluation systems to assist [it] in adjusting claims under this policy and to assist [it] in determining the amount of damages, expenses, or loss payable under this policy." *Id.* at 22, 27. Furthermore, the Policy allows Progressive Direct to procure such systems from third party developers. *Id.* at 27.

### b.  Plaintiff's Collision and Insurance Claim

Plaintiff was involved in a motor vehicle accident in May 2019 that rendered her vehicle—a 2012 Ford Fusion SEL—a total loss. Am. Compl. ¶ 18. Plaintiff alleges that, in connection with determining the value of her total loss vehicle, "J.D. Power and Mitchell provided Progressive [Direct] with a WCTL Report."[2] *Id.* ¶ 21. Plaintiff further alleges that the WCTL valuation process consists of five steps: "Step 1 - Locate Comparable Vehicles; Step 2 - Adjust Comparable

---

20, 71, 72, 76, 86, 87, 88, 89, 94, and is indisputably authentic, *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

[2] While Plaintiff alleges that her WCTL Report is attached as Exhibit A, Am. Compl. ¶ 21, no Exhibit A was attached to either the original or amended complaints. Plaintiff's WCTL Report is attached here as Exhibit 2. Like the Policy, the WCTL Report is also central to Plaintiff's claim, *see* Am. Compl. ¶¶ 21-30, 32, 37, 41-44, 68, 95, and is indisputably authentic, *see supra* n. 1.

Vehicles; Step 3 - Calculate Base Vehicle Value; Step 4 - Calculate Loss Vehicle Adjustments; and Step 5 - Calculate the Base Value."[3] *Id.* ¶ 32.

With respect to her total loss vehicle, Plaintiff alleges that the "Report purports to state a Base Value for her Vehicle in the amount of $7,647.24 and a Market Value of $6,318.18 after a negative Condition Adjustment in the amount of $1,379.06." *Id.* ¶ 23. Plaintiff does not allege what amount Progressive Direct offered to pay her for her vehicle, whether she disputed the offered amount or attempted to negotiate it, or whether Plaintiff accepted that amount—or any other amount—to settle her total loss claim. Nor does Plaintiff allege any particular misrepresentation or omission that Progressive Direct made to her or any misleading or deceptive conduct that Progressive Direct ostensibly engaged in with respect to her insurance claim.

### c. Plaintiff's Amended Complaint

Plaintiff filed this case on October 10, 2019, in state court in Orangeburg County. *See* Dkt. No. 1, ¶ 1. She filed her Amended Complaint a day later, on October 11, 2019. *Id.* Progressive Direct removed the case to this Court on November 19, 2019. *Id.* In the Amended Complaint, Plaintiff asserts three claims against Progressive Direct: breach of contract (Count I), breach of contract accompanied by fraudulent act (Count II), and bad faith (Count III).[4] *See generally*, Am. Compl. These claims are based on Plaintiff's conclusory allegation that each of the steps of the WCTL valuation method are "statistically invalid." *Id.* ¶ 23 (alleging the condition adjustment is "statistically invalid"); *id.* ¶ 24 (alleging the "Base Value" is "based on statistically invalid WCTL

---

[3] Though Plaintiff alleges that both Steps 3 and 5 of the WCTL valuation process involve calculating the base value, the WCTL Report shows that Step 5 is "Calculate the Market Value." *See* Ex. 2 at 8.

[4] Plaintiff also asserts two claims against only Mitchell and J.D. Power. *See* Am. Compl. ¶¶ 106-122 (asserting claims for "Tortious Interference with Performance of a Contract" and "Breach of Contract Arising from Plaintiff's Status as a Third-Party Beneficiary of the Agreement between J.D. Power/Mitchell and Progressive Direct").

methodology"); *id.* ¶ 34 (alleging the adjustments made to the comparable vehicles are statistically invalid). Plaintiff alleges that because its valuation methodology is "statistically invalid," WCTL "undervalue[s]" total loss claims and does not determine the "proper cash value amount sufficient for its insured to purchase a comparable replacement vehicle." *Id.* ¶¶ 34-35.

Specifically, as to Plaintiff's breach of contract claim, Plaintiff alleges that Progressive Direct breached the insurance policy through its:

> (a) failure to properly investigate and confirm the statistical validity of the WCTL Valuation Methodology; (b) improper delegation of its obligation to value total loss vehicles, including Plaintiff's Vehicle, to WCTL; and (c) wrongful failure to properly adjust and pay the amounts due and owed to Plaintiff for her total loss vehicle sufficient for Plaintiff to obtain a comparable replacement vehicle.

*Id.* ¶ 87. Plaintiff's claim for breach of contract accompanied by fraudulent act is similarly based on allegations that Progressive Direct "knew, but failed to disclose" that "the WCTL Report[] would wrongfully under-value [] [her] total loss vehicle[]," and "falsely inform[s] insureds that the WCTL Reports properly establish Actual Cash Value." *Id.* ¶¶ 15, 43. Plaintiff's bad faith claim relies on the same allegations, *i.e.*, that Progressive Direct allegedly failed to "reasonably investigate the fair value of the total losses sustained by [Plaintiff]," and "intentionally undervalue[ed] Plaintiff's claim," by use of the WCTL report. *Id.* ¶¶ 99, 102. Finally, while Plaintiff alleges that "industry-recognized guidebooks" like "NADA, Kelley Blue Book, and Black Book" are a "proper source for determining Actual Cash Value," *id.* ¶ 50, Plaintiff does not allege what she claims the actual cash value of her total loss automobile would have been using any of these guidebooks.

## III.    ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "asks for more than a sheer possibility

that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A plaintiff's obligation to provide the "grounds" of her entitlement to relief requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Conclusory allegations . . . do not contain sufficient facts to properly state a claim," making dismissal appropriate. *See ACA Fin. Guaranty Corp. v. City of Buena Vista*, 917 F.3d 206, 215 (4th Cir. 2019).

Furthermore, when a plaintiff alleges a fraudulent act in connection with a claim for breach of contract accompanied by fraudulent act, the plaintiff must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Advanced Pain Therapies, LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 3:14-CV-00050-MGL, 2014 WL 4402800, at *3 (D.S.C. Sept. 3, 2014). Thus, the plaintiff must "plead with particularity 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Neuman v. Levan*, No. 8:08-03418-HFF, 2009 WL 1856569, at *3 (D.S.C. June 26, 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). "[G]eneral and conclusory statements as to Defendant's allegedly fraudulent acts" do not suffice. *Advanced Pain Therapies*, 2014 WL 4402800, at *3.

### a. Plaintiff Fails to Sufficiently Allege a Breach of Contract.

To state a claim for a breach of contract, Plaintiff must plausibly allege "(1) a binding contract entered into by the parties; (2) breach or unjustifiable failure to perform the contract; and (3) damage suffered by the plaintiff as a direct and proximate result of the breach." *Bank v. How Mad, Inc.*, No. 4:12 CV 3159-RBH, 2013 WL 5566038, at *3 (D.S.C. Oct. 8, 2013) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962)). Here, Plaintiff has failed to sufficiently allege that Progressive Direct breached any provision of her insurance Policy or that she suffered damages from any alleged breach.

Specifically, Plaintiff fails to sufficiently allege breach because she fails to sufficiently allege that Progressive Direct breached any specific provision of the Policy. *See Thompson v. Brown*, No. 7:19-cv-02504-TMC-JDA, 2019 WL 6255829, at *5 (D.S.C. Oct. 3, 2019), *report and recommendation adopted at* 2019 WL 6255134 (D.S.C. Nov. 22, 2019). Plaintiff merely alleges that Progressive Direct committed a "breach" by: (a) failing to "properly investigate and confirm the statistical validity" of WCTL, (b) improperly delegating its obligation to value total loss vehicles to WCTL, and (c) failing "to properly adjust and pay the amounts due and owed to Plaintiff for her total loss vehicle sufficient for Plaintiff to obtain a comparable replacement vehicle." Am. Compl. ¶ 87. Each of these purported bases for breach of the Policy fails, however, based on the plain language of the Policy. *See Boldt Co. v. Thomason Elec. & Am. Contractors Indem. Co.*, 820 F. Supp. 2d 703, 707 (D.S.C. 2007) ("When the contract language is plain and capable of legal construction, that meaning alone will determine the instruments [sic] force and effect.") (citing *FDIC v. Prince George Corp.*, 58 F.3d 1041, 1046 (4th Cir. 1995)).

First, the Policy expressly states that Progressive Direct "may use estimating, appraisal, or injury evaluation systems to assist" Progressive Direct in adjusting total loss claims and "determining the amount of damages, expenses, or loss payable," and that "[s]uch systems may be developed by **us *or a third party***." Policy at 27 (second emphasis added). And the Policy imposes no independent obligation on Progressive Direct "to properly investigate and confirm the statistical validity" of a valuation product developed by a third party. The Policy merely requires that Progressive Direct pay its insured for a covered loss up to the limits of liability set forth in the Policy. Policy at 14-15. Plaintiff's allegations with respect to (a) and (b) therefore cannot serve as the basis for a breach of contract claim. *See Richardson v. Progressive Select Ins. Co.*, No. 2:18-cv-715-FtM-99MRM, 2019 WL 2287955, at *4 (M.D. Fla. May 29, 2019) (dismissing breach of

contract claim based on allegation that Progressive breached its Florida automobile insurance policy by delegating its obligation to value total loss vehicles to Mitchell).

Second, with respect to (c)—Plaintiff's theory that Progressive Direct failed to pay "the amounts due" to Plaintiff "sufficient for Plaintiff to obtain a comparable replacement vehicle"— the Policy does not obligate Progressive Direct to provide Plaintiff with sufficient funds to "obtain a comparable replacement vehicle." Am. Compl. ¶ 87. Rather, the Policy provides that Progressive Direct will pay for Plaintiff's covered loss up to the limit of liability stated in the Policy. Policy at 14-15. One limit of Progressive Direct's liability is the "actual cash value" of the loss vehicle based on "the market value, age, and condition of the vehicle at the time the loss occurs." *Id.* at 14-15, 22. Alternatively, a different limit of Progressive Direct's liability is "the amount necessary to replace the covered auto." *Id.* at 14. But nothing in the Policy *requires* Progressive Direct to pay for the "replacement cost[]" of a comparable vehicle. Plaintiff's allegation that Progressive Direct failed to pay that amount accordingly also cannot serve as the basis for a breach of contract claim. *See* Am. Compl. ¶¶ 35, 77, 87; *see also* Policy at 14-15 (differentiating between the "actual cash value" and "the amount necessary to replace" the loss vehicle).

Third, to the extent the Amended Complaint could be construed as alleging that Progressive Direct breached its obligation to pay the actual cash value of Plaintiff's total loss vehicle, the claim still fails due to Plaintiff's failure to "set forth sufficient facts regarding *how* the contract was breached." *See Thompson*, 2019 WL 6255829, at *5 (emphasis added). Stated another way, it is not enough to simply identify a provision of the Policy Progressive Direct purportedly breached; Plaintiff must provide sufficient facts giving rise to a plausible inference that the Policy was breached. Plaintiff has not done that here because, remarkably, Plaintiff's Amended Complaint contains only a single paragraph related to the valuation of her total loss claim, noting only that

the market value determined by the WCTL report was $6,318.18. Am. Compl. ¶ 23. While the Amended Complaint contains repeated allegations that WCTL "substantially and improperly understated" the value of her vehicle, *see, e.g.*, *id.* ¶¶ 24-25, 33, 35, 39, there are no facts alleged supporting that conclusion. An unadorned assertion that WCTL is "statistically invalid" is not a factual allegation—it is a conclusion. But that is all Plaintiff has done here. *Id.* ¶¶ 23-24, 26, 34, 37.

Plaintiff's failure to allege a single fact supporting her conclusion that WCTL is statistically invalid or that WCTL understated the value of her vehicle is particularly telling in light of Plaintiff's detailed description of the WCTL valuation report she was provided. Plaintiff quotes an entire paragraph on the partnership between Mitchell and J.D. Power to develop WCTL, notes that the WCTL report contains a methodology description, and describes the 5-step process used by WCTL to provide vehicle valuations. Am. Compl. ¶¶ 28-32. Yet Plaintiff does not identify any specific flaw in the WCTL methodology or any error on her WCTL valuation report other than to vaguely claim that the various steps of the WCTL methodology—*i.e.*, identifying comparable vehicles, adjusting comparable vehicles, and adjusting for condition—are "statistically invalid." Am. Compl. ¶¶ 34, 37. Indeed, she does not even allege what the actual cash value of her vehicle should have been or the condition her vehicle was in prior to the total loss. Plaintiff should not be permitted to proceed into discovery based on conclusory allegations.

Plaintiff's failure to allege the key element of breach is not the only flaw in her breach of contract claim. Plaintiff also fails to sufficiently allege the element of damages. This is because Plaintiff's Amended Complaint does not allege any of the facts necessary to demonstrate that Progressive Direct's alleged conduct caused her any injury. As noted above, Plaintiff does not even allege what Progressive Direct offered to settle her claim, whether the claim was settled, or

for what amount. Plaintiff alleges that Progressive Direct provided Plaintiff with a WCTL report indicating a pre-loss market value for her vehicle, *id.* ¶¶ 21-23, but Plaintiff does not allege that Progressive Direct offered to pay her that amount or that she accepted it. Plaintiff must allege that Progressive Direct underpaid her for her total loss vehicle to state a claim for breach of the Policy. *See Capital Corp. of Am., Inc. v. Teays River Invs., LLC*, No. 6:11-2796-HMH, 2012 WL 13006190, at *4 (D.S.C. Feb. 1, 2012) ("Damages are an essential element to a breach of contract action that must be pled and proven by the plaintiff."). Because the Amended Complaint does not include these critical allegations, Plaintiff's breach of contract claim should be dismissed.

### b. Plaintiff's Claim for Breach of Contract Accompanied by Fraudulent Act Fails for Multiple, Independent Reasons.

To state a claim for breach of contract accompanied by a fraudulent act, Plaintiff must allege: "(1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." *Harper v. Ethridge*, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986). Furthermore, the final element must be plead with sufficient particularly to satisfy Rule 9(b). Plaintiff fails to sufficiently plead any of these elements here.

*First*, Plaintiff's claim for breach of contract accompanied by a fraudulent act fails out of the gate because—as shown above—Plaintiff fails to sufficiently plead her claim for breach of contract. "There is no cause of action distinct from breach of contract for breach of contract accompanied by a fraudulent act," which merely serves to allow plaintiffs "to recover punitive damages" for a sufficiently alleged claim of breach of contract. *Smith v. Canal Ins. Co.*, 269 S.E.2d 348, 350 (S.C. 1980) (citation and internal quotation marks omitted). Plaintiff's right "to seek punitive damages for breach of contract" is thus "dependent upon her right to maintain the contract action." *Ateyeh v. Volkswagen of Florence, Inc.*, 341 S.E.2d 378, 380 (S.C. 1986). Because

Plaintiff fails to allege facts sufficient to make a claim for breach of contract, her claim for breach of contract accompanied by fraudulent act also fails.

*Second*, even assuming Plaintiff could state a claim for breach of contract, Plaintiff failed to plead fraudulent intent associated with the alleged breach of contract, as required under South Carolina law. *See Harper*, 348 S.E.2d at 378. Plaintiff's conclusory allegations that Progressive Direct "had the actual fraudulent intent to improperly adjust" claims in South Carolina and "knew" that WCTL undervalued total loss claims are woefully insufficient to allege a fraudulent intent in connection with Progressive Direct's alleged breach of Plaintiff's Policy. *See, e.g.*, Am. Compl. ¶¶ 15, 95. Federal courts in this district regularly dismiss claims when they are predicated only on vague assertions, not facts. *See, e.g.*, *Singleton v. City of Georgetown*, No. 2:15-02579-DCN, 2017 WL 570007, at *7 (D.S.C. Feb. 13, 2017) (dismissing claim where plaintiff "present[ed] only vague and unspecific allegations"); *PTA-FLA, Inc. v. ZTE Corp.*, No. 3:12-cv-02616-CMC, 2015 WL 13593694, at *18 (D.S.C. July 27, 2015) (dismissing claim where plaintiff provided "[n]o factual allegations [to] support a plausible inference" of fact in support of its claim); *Mincey v. World Savings Bank, FSB*, 614 F. Supp. 2d 610, 623 (D.S.C. 2008) (dismissing plaintiffs' claim because their "vague and conclusory allegations do not suffice" under 12(b)(6)).

*Third*, Plaintiff fails to allege "evidence of an independent fraudulent act which accompanied the breach"—let alone do so with the particularity required by Rule 9(b) for this element of her claim. *Minter v. GOCT, Inc.*, 473 S.E.2d 67, 70 (S.C. Ct. App. 1996); *Advanced Pain Therapies*, 2014 WL 4402800, at *3.

A "fraudulent act is any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design." *Harper*, 348 S.E.2d at 378. In addition, the alleged fraudulent act must be "***separate and distinct from the act(s) constituting the breach***."

*Smith*, 269 S.E.2d at 350 (emphasis added). Here, Plaintiff has failed to allege any independent fraudulent act at all, and certainly not a fraudulent act that is "separate and distinct" from the acts Plaintiff also alleges as the basis for her breach of contract claim.

As a threshold matter, Plaintiff does not sufficiently allege any fraudulent act with the particularity required under Rule 9(b). *Advanced Pain Therapies*, 2014 WL 4402800, at *3 (citation omitted). Rule 9(b)'s goal is to protect defendants by "provid[ing] [them] with 'sufficient information to formulate a defense by putting [them] on notice of the conduct complained of'" and "'eliminat[ing] fraud actions in which all the facts are learned after discovery.'" *Neuman*, 2009 WL 1856569, at *2 (quoting *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 921 (4th Cir. 2003)).

The general and conclusory allegations in the Amended Complaint do not satisfy this heightened standard because the bare-bones allegations of "fraudulent" acts fail entirely to notify Progressive Direct as to "the 'who, what, when, where, and how' of the alleged fraud." *Id.* at *3 (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)); *see* Am. Compl. ¶ 10 ("Progressive [Direct] and its co-conspirators . . . are not fair and honest in providing valuations to Progressive [Direct] insureds."); *id.* ¶ 13 ("Progressive [Direct and its co-defendants] . . . have engaged in a scheme to artificially deflate the value of first-party total loss claims."); *id.* ¶ 15 ("When Progressive [Direct] entered into the Policies at issue . . ., Progressive [Direct] knew, but failed to disclose to Plaintiff and the Class, that the WCTL Reports would wrongfully under-value their total loss vehicles."); *id.* ¶ 43 ("Progressive [Direct] has a regular practice of knowingly and falsely informing insureds that the WCTL Reports properly establish Actual Cash Value and provide the basis for proper payment of total loss claims."). Plaintiff does not allege who committed any allegedly fraudulent act, the contents of any alleged representations,

or when or where any of the above acts occurred. *See generally* Am. Compl. The Amended Complaint thus fails to give rise to a plausible inference under Rule 9(b) that Progressive Direct committed any fraudulent act at all. *See Neuman*, 2009 WL 1856569, at *3-4 (finding that the plaintiffs' assertion that defendants "engag[ed] in false, misleading and/or deceptive acts and practices" lacked "any particularity," thus warranting dismissal).

Setting aside Plaintiff's Rule 9(b) failures, the only conceivable "fraud" alleged in the Amended Complaint cannot sustain Plaintiff's claim because it is factually unsupported and overlaps entirely with Plaintiff's breach of contract claim. Specifically, Plaintiff alleges that Progressive Direct: (1) "suppressed and concealed" the fact that its valuations were based on the "statistically invalid and unlawful WCTL methodology," (2) "falsely inform[s] insureds that the WCTL Reports properly establish Actual Cash Value," and (3) underpays total loss claims due to its "intentional failure to fairly and properly determine Actual Cash Value and its knowingly improper downward Condition Adjustments." *See id.* ¶¶ 43, 46, 47. But as to the first, Plaintiff's own allegations confirm that Progressive Direct does not "conceal" the basis of its valuations. Plaintiff concedes that Progressive Direct provided her with the WCTL report and that the Report contains a detailed description of its valuation methodology. *Id.* ¶¶ 30-32. The contentions that Progressive Direct (2) falsely informs insureds that WCTL properly establishes actual cash value and (3) that it underpays total loss claims through the use of WCTL fare no better because they are the exact same acts underlying Plaintiff's breach of contract claim, *i.e.*, Progressive Direct's alleged failure to pay actual cash value. Those allegations therefore cannot provide "evidence of an independent fraudulent act which accompanied the breach." *Minter*, 473 S.E.2d at 71; *see also Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502, 503 (S.C. Ct. App. 1985) ("[M]ere breach of a contract, even if willful or with fraudulent purpose, is not sufficient to entitle a plaintiff

to go to the jury on the issue of punitive damages" under a theory of breach of contract accompanied by a fraudulent act.).

In sum, Plaintiff's allegations fall far short of fraud and merely reflect "a disagreement with Defendant's decision concerning coverage under the policy" that overlaps with Plaintiff's breach of contract claim. *Advanced Pain Therapies*, 2014 WL 4402800, at *3 (citation omitted). Plaintiff accordingly fails to sufficiently allege an "independent fraudulent act which accompanied the breach," and she fails to state a claim. *Id.* (internal quotation and citation omitted).

### c. Plaintiff Fails to Allege Conduct Constituting Bad Faith Under South Carolina Law.

Plaintiff makes the bare assertion that "Progressive [Direct] has acted in bad faith in adjusting Plaintiff's claim" by "intentionally undervaluing Plaintiff's claim." Am. Compl. ¶¶ 102-03. To sufficiently allege a claim for bad faith, however, Plaintiff must allege that Progressive Direct acted unreasonably in refusing to pay benefits under the insurance contract. *See Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996). This means that Plaintiff must allege "there was no reasonable basis to support the insurer's decision to deny benefits." *See Dowling v. Home Buyers Warranty Corp., II*, 400 S.E.2d 143, 144 (S.C. 1991); *see also Collins v. Auto-Owners Ins. Co.*, 759 F. Supp. 2d 728, 740 (D.S.C. 2010) ("[I]f there is a reasonable ground for offering less than the full amount demanded on a claim, then there is no bad faith. . . .").

In practice, South Carolina courts have found bad faith when an insurer provides either no reason or a nonsensical reason for refusing to pay benefits under an insured's claim. *See, e.g.*, *Cock-N-Bull Steak House, Inc.*, 466 S.E.2d at 730 (denying insurer's appeal of directed verdict after trial court found bad faith refusal to pay benefits where after a fire, insurer failed to identify any reason for excluding certain items from coverage); *Snider v. Nautical Mgmt. Reciprocal*

14

*Insurers*, No. 88-1394, 1991 WL 209822, at *2 (4th Cir. Oct. 21, 1991) (jury found bad faith refusal to pay benefits where insurer denied claim on the basis that plaintiff was at fault despite the Coast Guard's and the insurer's own adjustor's reports finding plaintiff was not at fault). In contrast, an insurer's denial of coverage has been found to be reasonable when "the insurer follows standard investigatory procedures and uncovers a reasonable ground for contesting a claim." *BMC Distribs. of S.C., LLC v. Nat. Union Fire Ins. Co. of Pittsburgh*, No. 12-178-RMG, 2013 WL 11328259, at *3 (D.S.C. June 13, 2013) (denying insured's partial motion for summary judgment) (citing *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 397 (S.C. 1992)). And bad faith does not encompass mere disagreements between parties about the worth of a claim. *See Collins v. Auto-Owners Ins. Co.*, 438 F. App'x 247, 249 (4th Cir. 2011) (affirming the district court's conclusion on summary judgment that "the fact that the parties had different estimations of the value of a claim is not, under South Carolina law, evidence of bad faith on the part of the party offering the lower amount"). Application of these standards here demonstrates that Plaintiff's Amended Complaint falls far short of alleging bad faith under South Carolina law.

In fact, Plaintiff's Amended Complaint demonstrates that Progressive Direct had a "reasonable basis" for its valuation decision: its use of WCTL, a product "designed and built in conjunction with J.D. Power's experts in data analysis and vehicle pricing and a highly trusted name among consumers." Am. Compl. ¶ 28. Plaintiff does not cite any South Carolina law, regulation, rule, or any other source suggesting that WCTL's methodology is improper. Quite the contrary. Plaintiff alleges that WCTL is based on comparable vehicle sales and listings. Am. Compl. ¶¶ 28, 32. Setting aside Plaintiff's vague allegation that WCTL's methodology for selecting comparable vehicles is somehow "statistically invalid"—Progressive Direct's use of a methodology based on comparable vehicles does not constitute bad faith because that valuation

15

method has been determined to be an acceptable practice in South Carolina for valuing total loss claims. *See, e.g.*, *Brown v. State Farm Mut. Ins. Co.*, 269 S.E.2d 769, 771 (S.C. 1980) (finding that automobile insurer did not "act[] unreasonably, or in bad faith" due to its use of comparable vehicles to determine a total loss vehicle's value). Furthermore, as stated above, the Policy unambiguously states that Progressive Direct may use third party valuation software to settle insureds' claims. *See Moss v. Minn. Life Ins. Co.*, No. 4:15-cv-1679-BHH, 2017 WL 5635449, at *8 (D.S.C. Mar. 29, 2017) (granting insurer's motion for summary judgment after finding no bad faith where insurer's denial of benefits was consistent with the unambiguous terms of the policy). Progressive Direct's use of WCTL to value Plaintiff's total loss claim accordingly cannot serve as the basis for a bad faith claim.

At bottom, Plaintiff has a garden-variety disagreement with Progressive Direct about the value of her total loss vehicle. That type of valuation disagreement does not rise to the level of bad faith in South Carolina. *See, e.g.*, *Henry v. Gov't Emps. Ins. Co.*, 275 F. Supp. 3d 750, 753-54 (D.S.C. 2017) (finding no bad faith when the plaintiff's "only evidence" of bad faith "beyond conclusory statements and inferences" was "his own trial Counsel's testimony that he believed the claim was worth more" than what the insurer offered).

## IV.     CONCLUSION

For all these reasons, Plaintiff has failed to plead any actionable claim against Progressive Direct. Plaintiff's Amended Complaint should therefore be dismissed in its entirety.

Dated: December 20, 2019

*/s/ Beattie B. Ashmore*
Beattie B. Ashmore
Fed. Bar No. 5215
Beattie B. Ashmore, P.A.
650 E. Washington Street
Greenville, SC 29601
P: (864) 467-1001

F: (864) 672-1406
beattie@beattieashmore.com

Jeffrey S. Cashdan*
jcashdan@kslaw.com
Zachary A. McEntyre*
zmcentyre@kslaw.com
KING & SPALDING LLP
1180 Peachtree St. NE
Atlanta, Georgia 30309
P: (404) 572-4600
F: (404) 572-5140

Julia C. Barrett*
jbarrett@kslaw.com
KING & SPALDING LLP
500 W. 2nd Street
Suite 1800
Austin, Texas 78701
P: (512) 457-2053

*Counsel for Defendant Progressive Direct
Insurance Company*

*\* Pro hac vice forthcoming*

17