IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Charmaine Wearing, individually and on behalf of those similarly situated, | ) ) ) | Civil Action No.: 5:19-cv-03264-JMC |
| Plaintiff, | ) ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| Progressive Direct Insurance Company, J.D. Power,[1] and Mitchell International, Inc., | ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the court for review of Defendants Mitchell International, Inc.'s ("Mitchell") and J.D. Power's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (ECF No. 21).  For the reasons set forth below, the court **GRANTS** Mitchell's and J.D. Power's Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  (ECF No. 21.)  Accordingly, the court declines to review their Motion to Dismiss (*id.*) for failure to state a claim pursuant to Rule 12(b)(6).

## I.    RELEVANT BACKGROUND

This class action concerns an alleged scheme to under value total loss claims made by Progressive Direct Insurance Company ("Progressive") automobile insurance policy holders. (ECF No. 1-2 at 3 ¶ 8.)

At some point before May 2019, Progressive issued Automobile Policy No. 916349359

---

[1] Although Plaintiff named "J.D. Power & Associates" as a Defendant in her First Amended Complaint, counsel for Plaintiff and Defendant J.D. Power have conferred and stipulate that the correct name of Defendant is "J.D. Power" rather than "J.D. Power & Associates."  (ECF Nos. 1-2 at 2, 40 at 1.)  As a result, the court **ORDERS** the Clerk of Court to change the caption in the electronic docket to reflect J.D. Power's correct name.

("Policy") to Plaintiff Charmaine Wearing ("Plaintiff") to insure her 2012 Ford Fusion. (*Id.* at 5 ¶¶ 16, 17.) Plaintiff contends that after her car was damaged in an accident on May 7, 2019, Progressive failed to properly value her car and therefore paid her less than she was entitled to under the terms of the Policy. (*Id.* at 6 ¶ 25.) Plaintiff maintains that Progressive determined that her car was a "total loss" after the accident and that the Policy requires Progressive to pay the "actual cash value" of a total loss vehicle. (*Id.* at 5 ¶¶ 18, 20.) However, Plaintiff alleges that her claim was "artificially deflate[d]" by Progressive's use of "WorkCenter Total Loss Vehicle Valuation Reports" ("WCTL Reports") prepared by Mitchell and J.D. Power. (*Id.* at 4 ¶¶ 11, 13.) Plaintiff contends that Mitchell and J.D. Power provided Progressive with a WCTL Report for her vehicle on May 13, 2019 and that the report "wrongly deprived her of $1,379.06 based on the downward Condition Adjustment[.]" (*Id.* at 5-6 ¶¶ 21, 23.)

Plaintiff alleges that the WCTL Report first calculates a "Base Value" for the vehicle. (*Id.* at 5 ¶ 22.) She asserts that the report then makes a "Condition Adjustment" for prior damages, aftermarket parts, and refurbishment that is deducted from the Base Value to calculate "Market Value." (*Id.*) Plaintiff claims that the WCTL methodology "routinely provide[s] Progressive total loss vehicle values that are not intended to yield an appropriate Actual Cash Value" but are "calculated to yield a substantially lesser and improper amount." (*Id.* at 8 ¶ 39.) She asserts that the Condition Adjustment is "statistically invalid" because the values assigned are "not based on any statistical, objective, valid, or verifiable data." (*Id.* ¶¶ 36-37.) In addition, she maintains that the Base Value "assigns actual cash values for total loss vehicles in an amount that is significantly lower than those assigned by published and publicly available valuation models, such as NADA, Black Book, Red Book, and Kelly Bluebook." (*Id.* at 7 ¶ 31.)

Plaintiff filed this action on behalf of herself and others similarly situated on October 10,

2019 against Defendants Progressive, Mitchell, and J.D. Power (collectively, "Defendants") in the Court of Common Pleas for the First Judicial Circuit. (ECF No. 1-1.) She then filed an Amended Complaint on October 11, 2019, asserting causes of action for breach of contract, breach of contract accompanied by fraudulent act, and bad faith against Progressive as well as claims for tortious interference with performance of a contract and third-party beneficiary breach of contract against Mitchell and J.D. Power. (ECF No. 1-2 at 18-24 ¶¶ 85-122.)

Defendants removed the case to this court on November 19, 2019, asserting federal subject matter jurisdiction based on the Class Action Fairness Act ("CAFA") of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711–1715. (ECF No. 1.) Mitchell and J.D. Power then filed a Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) on December 20, 2019. (ECF No. 21.) Plaintiff filed a Response (ECF No. 35) on January 24, 2020, to which Mitchell and J.D. Power replied on February 14, 2020 (ECF No. 47).

## II.    LEGAL STANDARD

When a court's personal jurisdiction over a defendant is contested, the plaintiff has the burden of showing that such jurisdiction exists. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). Where, as here, there has been no evidentiary hearing and the court proceeds upon the written submissions, plaintiffs must make only a prima facie showing that jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In deciding whether the plaintiff has met this burden, the court must take all disputed facts and reasonable inferences in favor of the plaintiff. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993)). The court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to

dismiss into a motion for summary judgment. *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). "Thus, for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

> South Carolina's long arm statute provides as follows:
>
> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36–2–803(A) (2005). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Grp.*, 126 F.3d at 623. Therefore, the appropriate question for the court in considering a personal jurisdiction defense raised by an out-of-state defendant is whether that defendant has "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see*

*Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 834 (D.S.C. 2015) ("Because the South Carolina long-arm statute is coextensive with the Due Process Clause, the sole question on a motion to dismiss for lack of personal jurisdiction is whether the exercise of personal jurisdiction would violate due process.").

Personal jurisdiction may arise through specific or general jurisdiction. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). Under general jurisdiction, a defendant may be sued in this court "for any reason, regardless of where the relevant conduct occurred," because its activities in South Carolina are "continuous and systematic." *Id.* (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)). When the defendant is a corporation, general jurisdiction requires affiliations "so 'continuous and systematic' as to render [the foreign corporation] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Supreme Court has emphasized that the "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business. *BNSF Ry. Co. v. Tyrrell,* 137 S. Ct. 1549, 1558 (2017). It is an "exceptional case," where a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Id*.

In contrast, specific jurisdiction exists if the defendant's contacts with the State are the basis for the suit. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be

constitutionally 'reasonable.'"  *Id.*  The third prong—that the exercise of personal jurisdiction be constitutionally reasonable—permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there.  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009).  Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Additionally, "in-forum effects of out-of-forum conduct can constitute minimum contacts with the forum sufficient to support personal jurisdiction."  *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 230 (4th Cir. 2019) (citing *Walden v. Fiore*, 571 U.S. 277, 287-88 (2014); *Calder v. Jones*, 465 U.S. 783 (1984)).  Under the so-called "effects test" set forth in *Calder*, a plaintiff may establish that specific personal jurisdiction is proper by showing that "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity."  *Consulting Eng'rs Corp.*, 561 F.3d at 278.

The Fourth Circuit recently noted that there are "important limitations on this principle." *Hawkins*, 935 F.3d at 230.  The "effects" must create a connection to the forum, not just to the parties who happen to live there.  *Id.*  The connection must be "substantial" and "a person cannot be haled into the forum simply because he knew that his conduct would have incidental effects there; he must have 'expressly aimed' his conduct at the forum."  *Id.*  The forum must be the "focal

point" of the conduct.  *Id.*  Also, "mere injury to a forum resident is not a sufficient connection to

the forum."  *Walden v. Fiore*, 571 U.S. 277, 290 (2014).  "The proper question is not where the

plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him

to the forum in a meaningful way." *Id.*

### III.    ANALYSIS

The court concludes that Plaintiff failed to meet its burden to show that Mitchell and J.D.

Power are subject to personal jurisdiction in this court.

### A.  General Jurisdiction

In the Amended Complaint, Plaintiff alleges that the court has personal jurisdiction over

Defendants under South Carolina's general jurisdiction statute, S.C. Code Ann. § 36-2-802 (2012).

(ECF No. 1-2 at 3 ¶ 6.)  However, she "does not assert general jurisdiction in opposition to the

Motion."  (ECF No. 35 at 2.)  Mitchell and J.D. Power contend that South Carolina courts do not

have general personal jurisdiction over them because they do not have "substantial, continuous,

and systematic contacts" with the state.  (ECF No. 21-1 at 6-7.)

Plaintiff puts forward no facts suggesting that Mitchell's or J.D. Power's contacts with

South Carolina are constant and pervasive.  The Amended Complaint specifically alleges that both

Mitchell and J.D. Power are incorporated in Delaware and have their principal places of business

in California.  (ECF No. 1-2 at 3 ¶¶ 4, 5.)

It is also clear from Mitchell's and J.D. Power's Motion to Dismiss and supporting

affidavits that they do not have affiliations "so 'continuous and systematic'" as to render them at

home in South Carolina.  *See Daimler AG*, 571 U.S. at 133 n.11 (quoting *Goodyear*, 564 U.S. at

919).  Mitchell does maintain a registered agent in South Carolina, but it maintains registered

agents in all fifty states.  (ECF No. 21-3 at 2 ¶ 6.)   Only .3647% of its revenue was generated in

South Carolina in 2019 and less than .1% of its employees reside in South Carolina.  (*Id.* at 1-2 ¶¶

5, 8.)  Mitchell also has no offices or property in South Carolina.  (*Id.* ¶¶ 4, 7.)  J.D. Power has

even fewer connections to South Carolina than Mitchell. It is not registered to do business in South

Carolina and does not pay taxes in South Carolina.  (ECF No. 21-2 at 2 ¶¶ 6, 7.)  In addition, J.D.

Power derives less than one percent of its revenue from sales in South Carolina and does not have

business operations, offices, or employees in South Carolina.  (*Id.* at 1-2 ¶¶ 4, 5, 9.)

Given Mitchell's and J.D. Power's lack of constant and pervasive contacts with South

Carolina, the court concludes that Plaintiff failed to meet her burden to show that Mitchell and J.D.

Power should be subject to this court's general jurisdiction.

B.  Specific Jurisdiction

The Amended Complaint does not allege that this court has specific jurisdiction over

Mitchell and J.D. Power.  Instead, it relies solely on South Carolina's general jurisdiction statute

to establish personal jurisdiction.  (ECF No. 1-2 at 3 ¶ 6.)  However, Plaintiff contends in her

Response that the Amended Complaint "contains detailed plausible factual allegations to support

the [c]ourt's exercise of specific jurisdiction over both Mitchell and [J.D.] Power."  (ECF No. 35

at 1.)  Specifically, Plaintiff cites the 6,575 WCTL Reports provided to South Carolina insureds

as evidence that Mitchell and J.D. Power purposefully availed themselves of the privilege of

conducting business in South Carolina.  (*Id.* at 3.)  She also claims that Mitchell's and J.D. Power's

"tortious conduct and illicit scheme with Progressive to cheat South Carolina total loss insureds"

is sufficient to establish specific jurisdiction over Mitchell and J.D. Power.  (*Id.* at 2.)  Mitchell

and J.D. Power dispute the existence of specific jurisdiction, claiming that Plaintiff has not pled

any actions by Mitchell or J.D. Power directed to South Carolina that caused her harm.  (ECF No.

47 at 11.)

8

Plaintiff has failed to establish that Mitchell and J.D. Power purposefully availed themselves of the privilege of conducting activities in South Carolina.  Plaintiff alleges that Mitchell and J.D. Power entered into a joint partnership to develop the WCTL product.  (ECF No. 1-2 at 4 ¶ 11.)  Plaintiff does not allege that J.D. Power had any contact with any person or entity in South Carolina in connection with its work on the WCTL project.  J.D. Power's Senior Accounting Manager, Charles Kim, avers that all of J.D. Power's contributions to WCTL took place in either California, Michigan, or Texas.  (ECF No. 21-2 at 2 ¶ 13.)  Plaintiff maintains that Mitchell later entered into a contract to provide Progressive, an Ohio entity, with WCTL Reports. (ECF No. 1-2 at 2 ¶ 3; 4 ¶ 13.)  In her affidavit, Mitchell's Vice President and Corporate Controller, Lisa Brockman, clarified that Mitchell entered into a contract to license WCTL technology to Progressive Casualty Insurance Company ("Progressive Casualty"), an Ohio entity distinct from the Progressive defendant in this case.  (ECF Nos. 21-3 at 2 ¶ 10; 47 at 2.)  She added that the contract was negotiated and signed in California and Ohio and did not involve J.D. Power.  (ECF No. 21-3 at 2 ¶ 10.)  Plaintiff asserts that the contract allowed Progressive to generate WCTL Reports "via the Web or as a stand-alone desktop application" to adjust total loss claims in all fifty states.  (ECF No. 35-2 at 4.)  Mitchell emphasizes that the contract allowed Progressive Casualty and its affiliates to generate reports in "all fifty states."  (ECF No. 47 at 2.)  Thus, Mitchell and J.D. Power did not sell individual WCTL Reports to Progressive concerning specific insureds in South Carolina.  Instead, J.D. Power helped Mitchell develop the technology, Mitchell licensed the technology to Progressive Casualty, and Progressive utilized the technology in the course of its business operations in South Carolina.

It is improper for a court to exercise personal jurisdiction over a manufacturer of a product when the product is introduced into the forum by a consumer rather than the manufacturer or a

distributor. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) (finding that a court in Oklahoma did not have personal jurisdiction over an automobile wholesaler and an automobile retailer in New York because one of the cars they sold to a New York resident was in an accident in Oklahoma).  In this case, a consumer of WCTL technology, Progressive Casualty, allowed one of its related entities, Progressive, to use the technology to generate reports that were subsequently in the course of its business in South Carolina.  Therefore, Mitchell, the manufacturer of the WCTL technology, did not purposefully avail itself of the privilege of conducting activities in South Carolina by licensing the technology to Progressive Casualty.  J.D. Power also did not purposefully avail itself of the privilege of conducting activities in South Carolina by participating in the development of technology that later produced reports that were introduced into South Carolina.

Plaintiff has also failed to show that Mitchell's and J.D. Power's "tortious conduct" establishes specific jurisdiction.  (ECF No. 35 at 2.)  In this case, South Carolina is not the "focal point" of the conduct.  *Hawkins*, 935 F.3d at 230.  The license agreement between Mitchell and Progressive Casualty allowed Progressive Casualty's affiliates, including Defendant Progressive, to access and use WCTL as a valuation tool without focus on any specific location.  In fact, Plaintiff makes no allegation that Mitchell specifically targeted South Carolina with this agreement or its performance under the agreement.  Plaintiff has asserted that South Carolina residents experienced financial injury as a result of Mitchell's and J.D. Power's conduct.  (ECF No. 1-2 at 22-23 ¶ 114.)  However, "mere injury to a forum resident is not a sufficient connection to the forum."  *Walden*, 571 U.S. at 290.

Since Plaintiff has failed to demonstrate purposeful availment and intentional tortious conduct directed at the forum, the court finds that Plaintiff failed to meet her burden to show that

Mitchell and J.D. Power should be subject to this court's specific jurisdiction.

C. Jurisdictional Discovery

Plaintiff claims that if the allegations in the Amended Complaint are insufficient to establish a prima facie case of personal jurisdiction, she is "entitled to limited jurisdictional discovery to meet her burden of proof and to resolve disputed factual issues bearing on jurisdiction." (ECF No. 35 at 3.) A court has discretion to stay consideration of a motion to dismiss for lack of personal jurisdiction to allow the parties additional time to engage in discovery relevant to the jurisdictional issue when there is some basis for believing additional discovery would be fruitful. *See* 4 Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1067.6 (4th ed. 2020); *Toys 'R' Us v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (finding that jurisdictional discovery should be granted "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts"); *Martinez v. Manheim Central California*, No. 1:10–cv–01511–SKO, 2011 WL 1466684, at *4 (E.D. Cal. 2011) (plaintiffs must bring forth "some evidence" sufficient to make "colorable showing" that court has personal jurisdiction over defendant in order to be entitled to jurisdictional discovery).

The Amended Complaint does not suggest that Mitchell and J.D. Power had substantial and continuous contacts with South Carolina or that the facts underlying Plaintiff's claims arise out of Mitchell's and J.D. Power's contacts with South Carolina. Instead, the Amended Complaint suggests that Mitchell and J.D. Power should be subject to personal jurisdiction in South Carolina as a result of Progressive's activities in South Carolina. Consequently, it does not appear that additional discovery would be fruitful. Accordingly, the court denies Plaintiff's request for jurisdictional discovery.

11

## IV.    CONCLUSION

The court **GRANTS** Mitchell's and J.D. Power's Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) (ECF No. 21) and **DISMISSES** them from the action. Therefore, the court declines to review their Motion to Dismiss (*id.*) pursuant to Rule 12(b)(6).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 22, 2020
Columbia, South Carolina