#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF SOUTH CAROLINA
#### ORANGEBURG DIVISION

| | |
|---|---|
| Charmaine Wearing, individually and on behalf of those similarly situated, ) ) ) Plaintiff, ) ) v. ) ) Progressive Direct Insurance Company,[1] ) ) Defendant. ) ) | Civil Action No.: 5:19-cv-03264-JMC  **ORDER AND OPINION** |

This matter is before the court for review of Defendant Progressive Direct Insurance Company's ("Progressive") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 22). For the reasons set forth below, the court **GRANTS** Progressive's Motion to Dismiss (ECF No. 22).

## I.    RELEVANT BACKGROUND

This class action concerns an alleged scheme to undervalue total loss claims made by Progressive automobile insurance policy holders. (ECF No. 1-2 at 3 ¶ 8.)

At some point before May 2019, Progressive issued Automobile Policy No. 916349359 ("Policy") to Plaintiff Charmaine Wearing ("Plaintiff") to insure her 2012 Ford Fusion. (*Id.* at 5 ¶¶ 16, 17.) Plaintiff contends that after her car was damaged in an accident on May 7, 2019, Progressive failed to properly value her car and therefore paid her less than she was entitled to under the terms of the Policy. (*Id.* at 6 ¶ 25.) Plaintiff maintains that Progressive determined that her car was a "total loss" after the accident and that the Policy requires Progressive to pay the

---

[1] The court issued an order on September 22, 2020 dismissing Defendants Mitchell International Inc. and J.D. Power from the action for lack of personal jurisdiction. (ECF No. 54.)

1

"actual cash value" of a total loss vehicle. (*Id.* at 5 ¶¶ 18, 20.) However, Plaintiff alleges that her claim was "artificially deflate[d]" by Progressive's use of "WorkCenter Total Loss Vehicle Valuation Reports" ("WCTL Reports") prepared by Mitchell International Inc. ("Mitchell") and J.D. Power. (*Id.* at 4 ¶¶ 11, 13.) Plaintiff contends that Mitchell and J.D. Power provided Progressive with a WCTL Report for her vehicle on May 13, 2019 and that the report "wrongly deprived her of $1,379.06 based on the downward Condition Adjustment[.]" (*Id.* at 5-6 ¶¶ 21, 23.)

Plaintiff alleges that the first step of the WCTL methodology calculates a "Base Value" for the vehicle by analyzing the prices of comparable vehicles. (*Id.* at 5 ¶¶ 22, 32.) She asserts that the methodology then makes a "Condition Adjustment" for prior damages, aftermarket parts, and refurbishment that is deducted from the Base Value to calculate "Market Value." (*Id.*) Plaintiff claims that the WCTL methodology "routinely provide[s] Progressive total loss vehicle values that are not intended to yield an appropriate Actual Cash Value" but are "calculated to yield a substantially lesser and improper amount." (*Id.* at 8 ¶ 39.) She asserts that the Condition Adjustment is "statistically invalid" because the values assigned are "not based on any statistical, objective, valid, or verifiable data." (*Id.* ¶¶ 36-37.) In addition, she maintains that the Base Value "assigns actual cash values for total loss vehicles in an amount that is significantly lower than those assigned by published and publicly available valuation models, such as NADA, Black Book, Red Book, and Kelly Bluebook." (*Id.* at 7 ¶ 31.)

Plaintiff filed this action on behalf of herself and others similarly situated on October 10, 2019 against Defendants Progressive, Mitchell, and J.D. Power (collectively, "Defendants") in the Court of Common Pleas for the First Judicial Circuit. (ECF No. 1-1.) She then filed an Amended Complaint on October 11, 2019, asserting causes of action for breach of contract, breach of contract accompanied by fraudulent act, and bad faith against Progressive as well as claims for

2

tortious interference with performance of a contract and third-party beneficiary breach of contract against Mitchell and J.D. Power.  (ECF No. 1-2 at 18-24 ¶¶ 85-122.)

Defendants removed the case to this court on November 19, 2019, asserting federal subject matter jurisdiction based on the Class Action Fairness Act ("CAFA") of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711–1715.  (ECF No. 1.)  Progressive then filed a Motion to Dismiss pursuant to Rule 12(b)(6) on December 20, 2019 (ECF No. 22.)  Plaintiff filed a Response (ECF No. 34) on January 23, 2020 to which Progressive replied on February 13, 2020 (ECF No. 46).

On September 22, 2020, the court dismissed Mitchell and J.D. Power from the action for lack of personal jurisdiction.  (ECF No. 54.)

## II.     LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  "In considering a 12(b)(6) challenge to the sufficiency of a complaint, this Rule must be applied in conjunction with the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a)."  *Jenkins v. Fed. Bureau of Prisons*, C/A No. 3:10-1968-CMC-JRM, 2011 WL 4482074, at *2 (D.S.C. Sept. 26, 2011). Under Rule 8(a), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  Although Rule 8 does not require "detailed factual allegations" to

survive a motion to dismiss, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and view the complaint in the light most favorable to the plaintiff. *See e.g.*, *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). On a Rule 12(b)(6) motion, the Court can also consider an insurance policy discussed in the complaint. *See Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) ("a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" when the document "was integral to and explicitly relied on in the complaint" and there was no challenge to its authenticity); *Baiden & Assocs., Inc. v. Crum & Forster Specialty Ins. Co.*, No. 4:11–cv–267–RBH, 2012 WL 591752, at *3 (D.S.C. Feb. 23, 2012) (citing *Phillips* and considering insurance policy on motion to dismiss because policy was integral to the claims, the complaint explicitly referenced policy, and the plaintiff did not challenge policy's authenticity).[2]

Dismissal with prejudice is an extreme sanction that must be examined carefully. *North Carolina v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004). However, aggravating factors may present sufficient weight in favor of that sanction and bring it within the appropriate discretion of the district court. *Id.* For instance, one such aggravating factor is whether the plaintiff has persisted in failing to comply with Rule 8(a). *Id.*

---

[2] Although Plaintiff did not attach a copy of the Policy to her Amended Complaint, the court will consider the Policy attached to Progressive's Motion to Dismiss (ECF No. 22-2). Plaintiff's claims for breach of contract rely on the duties created by the Policy, the Amended Complaint explicitly references the Policy, and Plaintiff did not challenge the Policy's authenticity in her Response to Progressive's Motion to Dismiss. (ECF Nos. 1-2; 34.)

### III.     ANALYSIS

The court concludes that Plaintiff failed to sufficiently allege her claims for breach of contract, breach of contract accompanied by fraudulent act, and bad faith against Progressive.

A. Breach of Contract

Plaintiff claims that Progressive breached its Policy with Plaintiff by (1) failing to properly investigate and confirm the statistical validity of the WCTL valuation methodology; (2) improperly delegating its obligation to value total loss vehicles to WCTL; and (3) failing to pay Plaintiff a sufficient amount to obtain a comparable replacement vehicle.  (ECF No. 1-2 at 18-19 ¶ 87.)

To state a claim for breach of contract, a plaintiff must sufficiently allege "the existence of a contract, its breach, and damages caused by such breach."  *Hotel and Motel Holdings, LLC v. BJC Enterprises, LLC*, 780 S.E.2d 263, 272 (Ct. App. 2015).  Plaintiff has failed to meet this burden.

Although both parties agree that a contract existed, the Amended Complaint does not suggest that Progressive breached the contract.  (ECF Nos. 1-2 at 5 ¶ 17; 22-1 at 7.)  The Policy expressly provides that Progressive may use "estimating, appraisal, or injury evaluation systems" to assist in "determining the amount of damages, expenses, or loss payable under [the] policy."  (ECF No. 22-2 at 33.)  It also states that "[s]uch systems may be developed by [Progressive] or a third party and may include computer software, databases, and specialized technology."  (*Id.*)  However, it does not impose an independent obligation on Progressive to "properly investigate and confirm the statistical validity" of the valuation methodology as Plaintiff asserts.  (ECF No. 1-2 at 18-19 ¶ 87.)  Therefore, Progressive could not have violated the policy by failing to

investigate the validity of the WCTL valuation methodology or delegating valuation of total loss vehicles to WCTL software.

In addition, Plaintiff fails to sufficiently allege that Progressive was obligated to pay her an amount sufficient "to obtain a comparable replacement vehicle[.]" (*Id.*)  The Policy requires Progressive to pay:

> [T]he *lowest* of: 1. the actual cash value of the covered auto at the time of the accident; 2. the amount necessary to replace the covered auto; 3. the amount necessary to repair the covered auto to its pre-loss condition; or 4. the limit of liability shown on the declarations page for Uninsured Motorist Property Damage or Underinsured Motorist Property Damage, whichever applies.

(ECF No. 22-2 at 20-21 (emphasis added).)  Nothing in the Policy requires Progressive Direct to pay for the cost of a "comparable replacement vehicle." (*Id.*; ECF No. 1-2 at 18-19 ¶ 87.)  Since the Amended Complaint does not allege that "the amount necessary to replace the covered auto" was the lowest amount of the four limits of liability for property damage to a covered auto, it does not suggest that Progressive was obligated to pay Plaintiff the amount necessary to "replace the covered auto[.]" (*Id.*)  And even if Plaintiff was entitled to the amount necessary to replace the covered auto, she was not entitled to an amount sufficient "to obtain a comparable replacement vehicle" under the Policy as she claims.  (*Id.*)

Finally, Plaintiff fails to plead facts that would suggest that she was underpaid for her claim.  Although she claims that her WCTL Report placed the market value of her car at $6,318.18, Plaintiff does not allege how much Progressive paid her for her total loss, how much Progressive should have paid her, or whether she accepted any offer that Progressive made.  She also does not allege how flaws in the WCTL methodology resulted in the underpayment of her claim.  Since

Plaintiff has not alleged that Progressive underpaid her, she cannot state a claim for breach of the Policy.

B. Breach of Contract Accompanied by Fraudulent Act

Plaintiff also asserts a claim for breach of contract accompanied by fraudulent act against Progressive. Plaintiff supports her claim by maintaining that Progressive's actions "are characterized by dishonesty in fact and unfair dealing." (ECF No. 1-2 at 19 ¶ 93.)

To state a claim for breach of contract accompanied by a fraudulent act, a plaintiff must sufficiently allege (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not just its making; and (3) a fraudulent act accompanying the breach. *Conner v. City of Forest Acres*, 560 S.E.2d 606, 612 (S.C. 2002). As previously discussed, Plaintiff fails to sufficiently allege that Progressive breached the Policy. Consequently, she also fails to state a claim for breach of contract accompanied by fraudulent act.

C. Bad Faith

Plaintiff makes a third claim against Progressive for bad faith. She claims that Progressive acted in bad faith by "intentionally and improperly reducing total loss payments to Plaintiff and the Class Members[.]" (ECF No. 1-2 at 20 ¶ 100.)

To state a claim for bad faith, a plaintiff must show (1) the existence of an insurance contract between the parties; (2) refusal by the insurer to pay benefits due under the contract; (3) that the refusal resulted from the insurer's bad faith or unreasonable action; and (4) that the refusal caused damage to the insured. *Howard v. State Farm Mut. Auto. Ins.*, 450 S.E.2d 582, 586 (S.C. 1994). Here, Plaintiff fails to sufficiently assert that the alleged underpayment of her claim was the result of "bad faith" or "unreasonable action." (*Id.*) Valuing total loss vehicles by using data related to unidentified comparable vehicles is an accepted method of claims adjustment in South

7

Carolina. *See Brown v. State Farm Mut. Ins. Co.*, 269 S.E.2d 769, 770 (S.C. 1980) (finding that an insurer did not act unreasonably or in bad faith in failing to reveal the price and availability of a comparable vehicle to an insured while adjusting a total loss claim). The Policy also explicitly states that Progressive may use third-party valuation software to settle claims. (ECF No. 22-2 at 33.) Furthermore, Plaintiff's allegations that Progressive participated in an "intentionally wrongful and improper schedule scheme to under-value total losses" are nothing more than conclusory. (ECF No. 1-2 at 3 ¶ 8.) Plaintiff simply alleges the elements of a bad faith cause of action and modifies them with "bad faith," "improper," or "wrongful." (*See, e.g.*, *id.* at 20 ¶ 100 ("Progressive contracted with J.D. Power and Mitchell and utilized the WCTL Valuations for the *wrongful* and *bad faith* purpose of intentionally and *improperly* reducing total loss payments to Plaintiff") (emphasis added).)

Accordingly, the court grants Progressive's Motion to Dismiss (ECF No. 22). Since denial with prejudice is an extreme measure and Plaintiff has not overly burdened the court with only one insufficient amended complaint, the court dismisses Plaintiff's Amended Complaint (ECF No. 1-2) without prejudice.

## IV.     CONCLUSION

The court **GRANTS** Progressive's Motion to Dismiss (ECF No. 22) pursuant to Rule 12(b)(6) (ECF No. 22). Therefore, it **DISMISSES** Plaintiff's Amended Complaint (ECF No. 1-2) **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 25, 2020
Columbia, South Carolina